UNITED STATES of America (DRUG ENFORCEMENT AGENCY), Plaintiff–Appellee,

v.

In re ONE 1987 JEEP WRANGLER AUTOMOBILE VIN # 2BCCL8132HBS12835, Defendant,

Izaak Draper, Claimant–Appellant.

No. 1413, Docket 92–6025.

United States Court of Appeals, Second Circuit.

Argued May 7, 1992.

Decided Aug. 6, 1992.

James J. Gelber, Asst. U.S. Atty., Burlington, Vt. (Charles A. Caruso, U.S. Atty., D.Vt., Helen M. Toor, Asst. U.S. Atty., on the brief), for plaintiff-appellee.

Frederick L. Woeckener, Cooperating Counsel, American Civil Liberties Union, Hyde Park, Vt., for claimant-appellant.

Before: FEINBERG and McLAUGHLIN, Circuit Judges, and McAVOY, District Judge *.

* Honorable Thomas J. McAvoy, United States District Court Judge for the Northern District of New York, sitting by designation.

McAVOY, District Judge:

Appellant Izaak Draper appeals from an Order of the United States District Court for the District of Vermont, Franklin S. Billings, Jr., Judge, dated December 3, 1991, denying appellant's Motion for Return of Property (as per Fed.R.Crim.P. 41(e)), and from a subsequent Order of the same court denying appellant's Motion for Reconsideration, dated January 2, 1992. The subject property of the Rule 41(e) motion before the district court was One 1987 Jeep Wrangler Automobile, VIN # 2BCCL8132HBS12835 (hereinafter "Jeep") which had been seized by the Drug Enforcement Agency ("DEA" or "Government") for purposes of forfeiture pursuant to 21 U.S.C. § 881(a)(4) and 21 C.F.R. §§ 1316.71 *et seq*. The appellant claimed below that the Jeep had been wrongfully seized in violation of an Order of Return of Property issued by the Honorable Joseph Wolchik, Judge of the District Court, State of Vermont, on June 16, 1991.

Judge Billings determined that the commencement of the administrative forfeiture proceeding divested the federal court of jurisdiction and therefore denied the motion. This conclusion was reiterated in response to appellant's subsequent Motion for Reconsideration which challenged the previous Order of dismissal.

On appeal, appellant asserts that the district court erred in refusing to address the merits of the Rule 41(e) motion, arguing that the state district court's decision to return the Jeep created a *res judicata* bar to further seizures. In addition, appellant contends that the procedure followed by the DEA in seizing the Jeep violated due process.

For the reasons discussed below, we affirm the district court yet remand the action back to the DEA for further administrative proceedings consistent with this decision.

## I. BACKGROUND

The facts of this case, although seemingly complex, bear directly on the outcome of this case and are therefore worthy of recitation.

On April 17, 1991, appellant Izaak Draper and a companion were arrested by the Lamoille County Sheriff's Department (hereinafter "Sheriff's Department") for the possession of a small amount of marijuana (under 25 grams). The Jeep was impounded ancillary to that arrest. The following day, a Stowe Vermont Police Officer, representing that he was on assignment to the DEA, contacted the Sheriff's Department by telephone and indicated that the DEA would take "custody" of the vehicle. Although legal custody was purportedly transferred from the Sheriff's Department to the United States Marshall's service (who in turn "nominated" the Sheriff's Department as "custodian" of the Jeep on behalf of the DEA), physical custody remained at all times with the Sheriff's Department.

On April 26, 1991, Draper filed a Motion for Return of Property with the Vermont State District Court pursuant to Vermont Rule of Criminal Procedure 41(e).[1] The

1. Vermont Rule of Criminal Procedure 41(e) provides in pertinent part:
   **Motion for Return of Property.** A person aggrieved by an unlawful search and seizure may move the court to which the warrant was returned or the court in the county or territorial unit where property has been seized without warrant for the return of the property on the ground that he is entitled to lawful possession of the property which was illegally seized....
   Vt.R.Cr.P., Rule 41(e).
   Fed.R.Crim.P. 41(e) provides essentially the same relief as its state counterpart of the same designation, and reads:
   (e) Motion for Return of Property. A person aggrieved by an unlawful search and seizure

   or by the deprivation of property may move the district court for the district in which the property was seized for the return of the property on the ground that such person is entitled to lawful possession of the property. The court shall receive evidence on any issue of fact necessary to the decision of the motion. If the motion is granted, the property shall be returned to the movant, although reasonable conditions may be imposed to protect access and use of the property in subsequent proceedings. If a motion for return of property is made or comes on for hearing in the district of trial after an indictment or information is filed, *it shall be treated also as a motion to suppress under Rule 12.*

state action was brought under the Vermont Criminal Procedure law and named only the state and Draper as parties.

On May 20, 1991, after Draper filed his state 41(e) motion but before it was decided, the Government commenced an administrative forfeiture proceeding pursuant to 21 U.S.C. § 881(a)(4) and 21 C.F.R. §§ 1316.71 *et seq.* against the Jeep. The DEA claims to have served a Notice of Seizure upon the appellant on this date and to have advertised the seizure on May 29, 1991 in a national daily newspaper.[2] Appellant contests the existence of these notices and the record contains no actual proof of either.

On June 16, 1991, the state district court decided the appellant's motion in his favor, ordering the return of the Jeep. In doing so, the state court determined that there was "insufficient evidence before it to conclude that the seizure was unlawful" but rather returned the Jeep under a substantial justice provision contained in the Vermont Criminal Code at Rule 57. *State of Vermont v. Izaak Draper*, Doc. No. 319–5–9Lcr (Dist.Ct.Vt., June 16, 1991).[3] In so ordering, the state court concluded that neither the state nor the federal government had an interest in the vehicle. *Id.* The Jeep was physically returned to Draper on June 27, 1991.

On July 1, 1991, Draper pleaded guilty to the offense of possession of marijuana and was fined $500.00. Eight days later, DEA agents physically seized the Jeep without notice. Draper claims that "an agent who participated in the seizure advised counsel for appellant over the telephone that a Notice of Seizure would issue within thirty days." Appellant's Brief, p. 8. The facts then diverge at this point.

Appellant contends that he waited thirty days and then, no Notice of Seizure forthcoming, filed a Notice of Claim on August 27, 1991. Appellant's Brief p. 8. The Government acknowledges that appellant filed a Notice of Claim but asserts that it was filed on August 8, 1991, not August 27. Further, the Government claims that this Notice of Claim was filed in response to the first seizure notice served on May 20, 1991. Because the claim was received well after the twenty day allotment in which to respond, as indicated in the Notice of Seizure, the Government deemed the claim untimely. Appellee's Brief pp. 3–4. It is unclear why the two sides differ so substantially as to the filing date of this Notice of Claim and the record is of no help because a copy of the claim is not included. In any event, both sides agree that the Notice of Claim was rejected by the DEA and returned to Draper on September 3, 1991.

On September 24, 1991, Draper filed a Motion for Return of Property pursuant to Fed.R.Crim.P. 41(e) in the United States District Court for the District of Vermont. During the pendency of this motion, a new Notice of Seizure was served upon Draper's attorney by certified mail on or about October 17, 1991.[4] This notified Draper that he had the option of requesting remission or mitigation of the forfeiture within the DEA administrative process or of filing a claim and cost bond thereby commencing a civil judicial proceeding. No Notice of Seizure was published in relation thereto.

---

2. For purposes of this Decision, these events, in combination with the physical seizure of the Jeep, will be referred to as "the first seizure."

3. The opinion of the state court reads:
   V.R.Cr.P. 41(e), cited by the defendant as the basis for the motion, is not on point, because the court has insufficient evidence before it to conclude that the seizure was unlawful. We do conclude, however, that continued possession by the state of Vermont is without justification. The court will invoke V.R.Cr.P. 57 and proceed to do justice between the parties, therefore.

V.R.Cr.P. 57, entitled **PROCEDURE NOT OTHERWISE SPECIFIED,** provides:
   When no procedure is specifically prescribed, the court shall proceed in any lawful manner not inconsistent with the Constitution of the United States, the Constitution of the State of Vermont, these rules or any applicable statute.

4. This event, in combination with the July 9, 1991, seizure of the Jeep, is deemed "the second seizure."

**476**

In the federal district court, appellant argued that the state court's return of property worked a *res judicata* effect upon the government, preventing subsequent DEA seizure. Appellant relied upon a denomination of the state and federal actions as *quasi in rem*, arguing that the state district court's determination that neither the state nor federal government had a sufficient interest in the action barred future seizure and forfeiture by either.

Judge Billings ruled that the October 17, 1991 Notice of Seizure effectively divested the federal district court of jurisdiction and declined to address the merits. A motion for reconsideration was likewise denied on January 2, 1992, and the instant appeal ensued.

## II. DISCUSSION

### A. *Jurisdiction/Collateral Estoppel/Res Judicata*

#### 1.

■ At the outset, we note that civil forfeiture is a creature unto itself. It is an area of the law which is founded upon the many inherent fictions of our jurisprudence. *See* Pratt and Petersen, *Civil Forfeiture in the Second Circuit*, 65 St. John's L.Rev. 653 (1991) ("Perhaps no area of the law embodies more legal fictions—and better illustrates their use and misuse—than does civil forfeiture"). As perhaps the most obvious use of legal fiction, the civil forfeiture action is brought directly against the property as defendant. The conceptual basis of the forfeiture is, quite basically, that the property has perpetrated some wrong. *United States v. One Mercedes–Benz 380 SEL*, 604 F.Supp. 1307, 1312 (S.D.N.Y.1984), *aff'd*, 762 F.2d 991 (2d Cir.1985). Thus, as the action is against the property and not the owner, the action is *in rem* in nature. *One Mercedes–Benz 380 SEL*, 604 F.Supp. at 1312; *United*

*States v. Four Parcels of Real Property*, 941 F.2d 1428, 1435 (11th Cir.1991).

■ For the Government to obtain a judgment of forfeiture, it must demonstrate probable cause establishing a nexus between the seized property and illegal drug activity. *See United States v. 228 Acres of Land*, 916 F.2d 808, 811–12 (2d Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 972, 112 L.Ed.2d 1058 (1991). The probable cause standard requires the Government to have "reasonable grounds to believe that certain property is subject to forfeiture. These grounds must rise above the level of mere suspicion but need not amount to what has been termed 'prima facie proof.' " *United States v. Banco Cafetero Panama*, 797 F.2d 1154, 1160 (2d Cir.1986) (citations omitted); *United States v. Premises & Real Property at 4492 South Livonia Rd.*, 889 F.2d 1258, 1267 (2d Cir.1989). The probable cause showing need only link the defendant property with illegal drug activity generally, not to a particular transaction.[5] *228 Acres, supra*, 916 F.2d at 812.

■ The Government need not prove, within the criminal justice system, that the owner committed a crime. *United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 361, 104 S.Ct. 1099, 1104, 79 L.Ed.2d 361 (1984) (even an acquittal does not bar subsequent civil forfeitures for the same action); *see also One Lot Emerald Cut Stones & One Ring v. United States*, 409 U.S. 232, 235, 93 S.Ct. 489, 492, 34 L.Ed.2d 438 (1972); *United States v. One 1977 Lincoln Mark V*, 453 F.Supp. 1388, 1391 (S.D.N.Y.1978) (the lack of a criminal conviction on charges relating to the incident giving rise to the forfeiture is not a valid defense to forfeiture). A forfeiture proceeding may even be commenced where no criminal action is brought. Consequently, the determination of when the government is to proceed against a piece of property is seemingly discretionary and limited

---

**5.** Once the government has made its probable cause showing, the burden shifts to the claimant to demonstrate that the factual predicates for forfeiture have not been met. *United States v. One Parcel of Property Located at 15 Black Ledge Drive*, 897 F.2d 97, 101 (2d Cir.1990). "The claimant must prove either that the property was not used unlawfully, or that the illegal use was without the claimant's knowledge or consent." *Livonia Road*, 889 F.2d at 1267.

only by the relevant statute of limitations.[6]

In the instant case, appellant argues that the Vermont State District Court's determination that the federal Government had not established jurisdiction over the defendant property bars all further attempts to do so. We find this position to be misplaced.

### 2.

■ Viewing the matter from a procedural standpoint, it is clear that the federal agency involved, the DEA, abandoned its first claim to the Jeep which arose concomitant with the May 20, 1990 seizure. The clarity of this thought derives from the very fact that the DEA acquiesced to the return of the property to the claimant, appellant here. By doing so, the agency yielded to the jurisdiction of the state district court, perhaps realizing that concurrent adjudication would be problematic.[7]

■ Whatever the reasons for the abandonment, the *res* was returned to the claimant prior to prosecutorial attempt by the DEA. Thus, no collateral estoppel effect attaches. *See United States v. Schmalfeldt*, 657 F.Supp. 385 (W.D.Mich.1987) (holding that withdrawal of a civil forfeiture complaint, without adjudication or prosecution, does not prevent future criminal forfeiture under doctrine of collateral estoppel).

In fact, the state district court recognized the elemental distinction of *in rem* jurisdiction which allows for jurisdiction only when custody is obtained over the *res*. This understanding is evidenced in the carefully tailored language of the state court's decision. There, the state district court held that the federal Government lacked jurisdiction over the Jeep because the Jeep remained locked in a garage in Morrisville, Vermont, over which the state had control. In this regard, the state court found that the purported telephone call between a Stowe Vermont/DEA Liaison Officer and a Lamoille County Sheriff's officer to be an "insufficient event to convince the court that the state was no longer responsible for what happened to the vehicle and that the Federal government obtained jurisdiction." *State v. Draper, supra.* Thus, the state had control and custody and, therefore, jurisdiction. Finding that it had no interest in the Jeep, the state court consequently returned the Jeep.

### 3.

■ Appellant also argues that the commencement of the first forfeiture proceeding simultaneously with a state court proceeding adjudicating control of the *res* operates to bar further governmental forfeiture against the defendant property. In

---

**6.** *See* 19 U.S.C. § 1621 (setting five year statute of limitations under the customs laws which are implicated in civil forfeiture through 21 U.S.C. § 881(d)). *But see, United States of America v. Property Titled in the Name of James Daniel Good*, 971 F.2d 1376 (9th Cir.1992) (limiting time to commence forfeiture action to reasonable time from discovery of forfeitable activity). Because this case does not raise issues relating to the relevant statute of limitations, the court makes no ruling or holding in relation thereto.

**7.** As an *in rem* action, jurisdiction over the *res* derives entirely from control over the defendant *res. Pennington v. Fourth Nat'l Bank*, 243 U.S. 269, 272, 37 S.Ct. 282, 283, 61 L.Ed. 713 (1917); *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1435 (11th Cir.1991). Some courts have held that once the *res* is released from custody, especially in cases concerning inherently mobile conveyances, subject matter jurisdiction is lost. *United States v. $84,740.00 U.S. Currency*, 900 F.2d 1402, 1404 (9th Cir. 1990) ("The general rule is that upon the remov-

al of the *res*, the jurisdiction of the court ends"); *The Manuel Arnus*, 141 F.2d 585 (5th Cir.), *cert. denied*, 323 U.S. 728, 65 S.Ct. 63, 89 L.Ed. 584 (1944) (holding that subject matter jurisdiction is lost once the *res* is released into the hands of an individual free to remove it from the territorial jurisdiction of the court). The wisdom of this rule, however, has been questioned in the Second Circuit. *See United States v. Aiello*, 912 F.2d 4, at 6 n. 1 (2d Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 757, 112 L.Ed.2d 777 (1991). Nevertheless, it is clear that once the property is removed from the court's territorial jurisdiction, subject matter jurisdiction is retained only in exceptional circumstances. *Id.* and accompanying text; *see, United States v. One (1) 1983 Homemade Vessel Named "Barracuda"*, 858 F.2d 643, 647 (11th Cir.1988) (holding that subject matter jurisdiction is lost if the *res* is removed from beyond the territorial jurisdiction of the court); *United States v. One Lear Jet Aircraft*, 836 F.2d 1571, 1573 (11th Cir.1988) (en banc) (same).

support of such a proposition, appellant relies on *United States v. $2,542 in U.S. Currency*, 754 F.Supp. 378 (D.Vt.1990). Again, we find appellant's reliance to be misplaced.

In *$2,542*, defendant currency was seized by state officials pursuant to a search warrant which resulted in the arrest of its putative owner. After the owner pled nolo contendere to the misdemeanor charge of possession of marijuana, he commenced a Rule 41(e) motion in the Vermont State District Court. While the state action was pending, the DEA seized the money and attempted to begin administrative forfeiture proceedings over it. In response, the owner filed a claim and bond thus preempting the administrative forfeiture with a judicial forfeiture proceeding in the federal court. Once the civil action was commenced, the owner then brought a motion to dismiss the judicial forfeiture action, arguing that the federal court lacked subject matter jurisdiction to adjudicate the matter.

Recognizing issues of comity and federalism, Judge Parker ruled that the federal court lacked jurisdiction in situations, such as the one before it, where two courts simultaneously sought jurisdiction over the same *res* in *in rem* or *quasi in rem* actions. *See* 754 F.Supp. 378, 379–81. If the second court which wished to obtain jurisdiction over the *res* did not yield to the prior proceeding, Judge Parker reasoned, the result "would [be to] substitute a rule of force for the principle of mutual respect embodied in the prior exclusive jurisdiction doctrine." 754 F.Supp. 378, 380 *quoting United States v. $79,123.49 in U.S. Cash and Currency*, 830 F.2d 94, 98 (7th Cir. 1987). Wishing to avoid such a result, Judge Parker dismissed the action before him.

The instant case and *$2542* are inapposite. In *$2542*, the claimant chose to commence a civil judicial proceeding in response to the Notice of Seizure. This placed the district courts of the federal and state jurisdictions in juxtapositions of authority. By contrast, the DEA did not pursue the civil forfeiture in this action until after the state court yielded jurisdiction. Had Draper timely responded to the first Notice of Seizure, a different result may well have been reached today. However, that is not the case and we need not reach that issue. Rather, the facts of this case reveal that there were not two simultaneous proceedings as was the case in *$2542*. Perhaps this was so more by fortuity than design. Whatever the reason, the government yielded in its initial pursuit of the property.

4.

■ Appellant nevertheless attempts to use the dicta of *$2542* to construct his *res judicata* argument. In *$2542*, Judge Parker stated that 41(e) motions are *quasi in rem* in nature and, unlike *in rem* actions, do "not 'bind the whole world.' " 754 F.Supp. at 382. Appellant argues, however, that *quasi in rem* actions do bind those who have an interest in the object *and* who have either actual or constructive notice of the prior proceeding. *See Restatements II. Judgments*, Chapter 2, § 6, p. 73. From this appellant contends that the state Rule 41(e) motion created a *res judicata* bar to latter forfeiture attempts because the federal government had an interest in the Jeep, as evidenced by the state court opinion, and constructive notice of the state procedure. Again we disagree.

In point of fact, the state judge in his Findings of Fact and Conclusions of Law found that the federal government had not "created" an interest in the vehicle. In this regard, the state court stated:

> The telephone call between officers Parry and Marcoux is an insufficient event to convince this court that the State of Vermont was no longer responsible for what happened to this vehicle and that the Federal government obtained jurisdiction.
>
>     *      *      *      *      *      *
>
> The state has conceded that it has no interest, and we have found that none has been created in the Federal government by the telephone call between the officers.

*State v. Draper, supra.* *See* Joint Appendix, p. 4–5.

Appellant attempts to read more into the state court's opinion than is there. The scope of the state court's jurisdiction was limited to adjudicating the appellant's rights in the Jeep as they were implicated by the state criminal proceeding. The state court judge did not, nor could he have, adjudicated the federal government's interest in the Jeep as that interest arises under the federal forfeiture statutes. *See* 28 U.S.C. § 1355 (federal courts have exclusive jurisdiction over civil forfeiture proceedings incurred under an act of Congress); *see also* Vt.R.Crim.P. 54(a)(2) (providing that those rules do not apply to the "civil forfeiture of property for violation of a statute of the State of Vermont"); Fed. R.Crim.P. 54(b)(5) (providing that those rules do not apply to the "civil forfeiture of property for violation of a statute of the United States"); *Lacks v. Fahmi,* 623 F.2d 254, 256 (2d Cir.1980) ("It is elementary that a judgment entered in an action over which the court lacks jurisdiction cannot be afforded any binding force."). Furthermore, it is apparent that the federal government nor any of its agencies was a party to the state criminal proceeding. Thus, no *res judicata* effect could have attached.

### 5.

■ Finally reaching the issue of Judge Billing's holding in the instant case, we agree for essentially the reasons set out in the court's Order. Once the Government properly commences a civil forfeiture proceeding, it is the prerogative of the claimant to choose the forum of adjudication. *See* 28 C.F.R. §§ 9.1–9.7; 21 C.F.R. §§ 1316.71–.81. A judicial action may be commenced by filing a claim and cost bond within twenty days of the first date of publication. 21 C.F.R. § 1316.78. If the claimant chooses not to file the claim and cost bond within the allotted period of time, administrative forfeiture occurs by default. 21 C.F.R. § 1316.77. The claimant may then petition the administrative agency for remission and/or mitigation. 28 C.F.R. §§ 9.1–9.7. To determine mitigation or re-

mission, the *res* is deemed technically forfeited and the DEA is given broad discretion to lessen the effects of the forfeiture. In addition and under certain circumstances, the claimant may file a petition for expedited administrative review when the property has been seized for a violation involving personal use quantities of a controlled substance. *See* 21 C.F.R. §§ 1316.-90–1316.99. Appellant was notified of these options by the Notice of Seizure served upon his attorney. *See* Supplemental Joint Appendix, pp. 1–4.

■ Under all of the above scenarios, the claimant is afforded the opportunity to test the legality of the seizure in the forfeiture proceeding. *See In re Harper,* 835 F.2d 1273, 1274 (8th Cir.1988). Consequently, once the administrative process has begun, the district court loses subject matter jurisdiction to adjudicate the matter in a peripheral setting such as a Rule 41(e) motion. *United States v. Price,* 914 F.2d 1507 (D.C.Cir.1990). *See also, United States v. Castro,* 883 F.2d 1018, 1020 (11th Cir.1989) (holding that even court's equity powers do not allow adjudication under 41(e) unless: *res* is held for purposes of civil forfeiture and not as evidence to a crime; or, to deter unlawful conduct of law enforcement officials through the exclusion of evidence obtained illegally); *In re Harper,* 835 F.2d 1273, 1274 (8th Cir.1988) (affirming district court's refusal to entertain Rule 41(e) motion where government subsequently instituted civil forfeiture proceedings under 21 U.S.C. § 881(d)). To hold otherwise would be to ignore the jurisprudential particularities of actions *in rem* (as discussed above) and to thwart the DEA's grant of limited administrative autonomy. *See* 21 C.F.R. §§ 1316.77, 1316.-78. Here, the administrative forum afforded the claimant the opportunity to raise all objections to the seizure and the lack of a judicial remedy deprived him of nothing. Thus, we find that the district court properly dismissed the action before it for lack of jurisdiction and therefore we affirm its holding.

## B. *Due Process*

We now turn our attention to the second prong of the appellant's argument, namely, that the seizure of his Jeep violated his right to due process. In this regard, the appellant argues that the government's failure to accept his Notice of Claim, and its failure to advertise the second forfeiture, as required by 21 C.F.R. § 1316.75, denied him the right to due process. In opposition the Government argues that Draper failed to respond to the second Notice of Seizure and thus lost his right to contest the forfeiture. Further, it asserts that the claimant received actual notice from the first Notice of Seizure, as evidenced by the subsequent Notice of Claim, and therefore the publication requirement of 21 C.F.R. § 1316.75 should be excused. With the Government's position we now disagree. We address the DEA's handling of the Notice of Claim first.

### 1.

■ The overwhelming weight of authority supports the position that a federal court lacks jurisdiction to review the merits of administrative forfeiture decisions once the administrative process has begun. *In re Matter of $67,470.00*, 901 F.2d 1540 (11th Cir.1990); *United States v. One 1976 Porsche 911S*, 670 F.2d 810 (9th Cir.1979); *United States v. One 1973 Buick Riviera Automobile*, 560 F.2d 897 (8th Cir.1977); *La Chance v. Drug Enforcement Admin.*, 672 F.Supp. 76 (E.D.N.Y.1987). Nevertheless, an exception exists which allows an appellate court jurisdiction to review a decision of an administrative agency which amounts to a refusal to exercise its discretion. *Scarabin v. Drug Enforcement Admin.*, 919 F.2d 337 (5th Cir.1990); *see In re Matter of $67,470.00*, 901 F.2d at 1544 (a federal court may have jurisdiction to review agency determinations when the agen-

cy does not even consider a request that it exercise its discretion); *One 1977 Volvo 242 DL v. United States*, 650 F.2d 660 (5th Cir.1981) (recognizing exception where discretion not exercised); *Clow v. Nelson*, 579 F.Supp. 981, 983 (W.D.N.Y.1984) (same); *see* 21 U.S.C. § 877. Such review, however, "is limited to determining whether the agency followed the proper procedural safeguards when it declared [claimant's] property summarily forfeited." *Scarabin*, 919 F.2d at 338.

■ In the instant case, Draper's property was deemed summarily forfeited when he purportedly failed to respond to the second Notice of Seizure within the allotted twenty days. This occurred by operation of the DEA's decision to treat Draper's August Notice of Claim as relating to the first Notice of Seizure, not the second. 21 C.F.R. § 1316.77; *see* Notice of Seizure [8], Supplemental Joint Appendix, p. 2. We find that the DEA's determination that the claim related to the first Notice of Seizure, and not the second, was an arbitrary determination in light of the facts before it. By so concluding, the agency denied a request to exercise its discretion without regard to the merits of the claim and thereby denied Draper the procedural safeguards of the forfeiture statutes. Consequently, we find review justified and, upon the instant record, that Draper was denied a opportunity to be heard.

The facts reveal that Draper filed a Notice of Claim sometime in August of 1991.[9] The Government assumes that this Notice of Claim [10] was filed in response to the May, 1991 Notice of Seizure (the first seizure) and therefore argues that the claim is a nullity in that it was received more than twenty days after the first Notice of Seizure. Such an argument is illogical. In the interim between May 20, 1991 and August 1991, substantial events unfolded

---

**8.** The Notice of Seizure informed Draper that he could "petition the DEA for the return of the property of [his] interest in it (remission or mitigation), and/or [he could] contest the seizure and forfeiture of the property in court."

**9.** As previously noted, there is dispute amongst the parties as to the exact date of this filing.

For purposes of our analysis, we find that the exact date in the month of August is irrelevant.

**10.** Because neither party has supplied the court with a copy of the Notice of Claim, and because the Government has not argued otherwise, we assume that the notice was ambiguous as to which seizure it responded.

which discredit the Government's assumption that the claim relates to the first seizure and not the second.

Between May 1991 and August 1991, the state court returned the claimant's Jeep, the Jeep was re-seized by the DEA, and the claimant's attorney allegedly spoke with a DEA agent who indicated that a Notice of Seizure would be forthcoming within thirty days.

After having his Jeep seized by DEA agents, Draper remained in the dark as to its whereabouts for over three weeks. It is only logical that he would attempt to preserve his rights by filing a claim, especially in light of the fact that the DEA purportedly informed Draper's attorney of a thirty day time limit in which to file.[11] Crediting the appellant (or his attorney) with a basic understanding of forfeiture proceedings (a fair assumption given the fact that the government, by its own admission, supplied the claimant's attorney with an administrative Notice of Seizure in May of 1991 which explained the forfeiture process), it is apparent that the Notice of Claim, filed by the claimant in August 1991, was in response to the second seizure. The fact that the claimant did not receive a Notice of Seizure until three months after the second physical seizure (and over a month after the Notice of Claim was returned) is of no moment. A fair reading of the facts reveals that the claimant diligently acted to preserve *both* his administrative and civil remedies. He did so by first filing his Notice of Claim, even though no Notice of Seizure was received at this time, and, after receiving his rejected Notice of Claim, by then filing a Criminal 41(e) motion.[12]

This court finds that both modes of conduct were warranted in light of the action, or, more appropriately, the inaction of the government in this case. As many a litigator well knows, it is better to file too early than too late. Even if it is argued that the filing of a claim before the filing of a Notice of Seizure is a technical deficiency, this circuit has held that technical noncompliance with the procedural rules governing the filing of forfeiture claims will be excused where there is a sufficient showing of interest in the property. *United States v. Premises and Real Property at 4492 South Livonia Rd.*, 889 F.2d 1258, 1262 (2d Cir.1989). Here, we find that Draper's Notice of Claim evidenced sufficient interest in the property to preserve his rights therein. The court is troubled, nonetheless, by the fact that Draper did not file a cost bond with his claim. However, given the fact that forfeiture claims should be liberally construed (*Livonia Rd.*, 889 F.2d at 1262), it is conceivable that the claim was intended as either a claim for judicial intervention or as a petition for remission and mitigation. Either way, the import of the claim is that Draper took affirmative action to protect his rights in the defendant Jeep.

Once the Notice of Claim was received, the government could not arbitrarily decide that the Notice of Claim, although received some 68 to 87 days after the previously abandoned forfeiture, was in response thereto and not in response to the then current seizure. To do so, as they did, defeats the procedural protections of the statute allowing for an opportunity to be heard. While it is clear that a pre-deprivation hearing is not required in cases such as these which concern easily transportable conveyances (*Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974)), the opportunity for a hearing must be available at a "meaningful time" in order to comport with due process. *Id.* (citing *Fuentes v. Shevin,*

---

11. By the Government's own admission, the Notice of Claim was served within thirty days of the Jeep's seizure.

12. It is equally logical to conclude that, after the notice of claim was returned, the claimant would revert back to the forum that had previously been successful for him. Draper filed his federal Rule 41(e) motion some twenty days after his notice of claim was returned. That being so, we are disinclined to believe that such action indicates an abandonment of administrative or judicial forfeiture remedies. Further, the civil action served to notify the Government of Draper's continuing interest in the Jeep. Thus, the judicial route taken by the claimant, although obviously misplaced, was an understandable alternative and did not serve as constructive repudiation of Draper's desire for administrative adjudication.

407 U.S. 67, 90, 92 S.Ct. 1983, 1999, 32 L.Ed.2d 556 (1972)). When the agency stands at the hearing room door and arbitrarily denies access thereto, as was done here, a clear violation of due process is made out.

### 2.

The appellant's argument that he was denied sufficient notice as to the second seizure is counter-intuitive to the facts as presented. If the claimant responded to the second seizure with a Notice of Claim, as he contends, he attests to the fact that he had received actual notice of the seizure. Constructive notice is not further required. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313–316, 70 S.Ct. 652, 657–59, 94 L.Ed. 865 (1950) (impliedly holding that actual notice satisfies demands of due process); *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 798–800, 103 S.Ct. 2706, 2711–2712, 77 L.Ed.2d 180 (1983) (same). In so holding, the court does not sanction the Government's argument that the notice requirement of 21 C.F.R. § 1316.75 was somehow excused by the earlier filing. Rather, the court holds that in this instance, by virtue of Draper's admitted actual knowledge of the seizure, the lack of the latter publication notice did not arise to the level of a due process violation.

### III. CONCLUSION

We find that the district court properly dismissed the appellant's Rule 41(e) motion for lack of jurisdiction. Accordingly, we affirm the decision of the district court. Further, we find that appellant Draper's claim was unjustly rejected by the DEA thereby denying him an opportunity to be heard. This arises to the level of a due process violation and we therefore remand the action back to the administrative agency for further proceedings. In doing so, we instruct that the DEA shall accept Draper's notice of claim as relating to the second forfeiture proceeding and shall construe this notice in a manner consistent with the pertinent forfeiture provisions. What type of adjudicative relief this shall afford the claimant is within the discretion of the DEA.

We decline to reach the merits of Draper's due process claim in relation to the publication requirement because we find that Draper possessed actual knowledge of the seizure sufficient to satisfy the demands of due process. Finally, we find that Draper's facial challenge to the constitutionality of the forfeiture proceeding is without merit and we therefore decline to grant relief on this basis.

Affirmed and Remanded for further administrative proceedings.