**Bessie Brown DAWSON, Plaintiff,**

v.

**The DRUG ENFORCEMENT ADMINIS-TRATION and the United States Department of Justice, Defendants.**

**No. 95 Civ. 3055 (JES).**

United States District Court,
S.D. New York.

June 11, 1996.

---

Bessie Brown Dawson, New York City, Pro Se.

Mary Jo White, United States Attorney, New York City, for Defendants; Alexander H. Shapiro, Assistant United States Attorney, of counsel.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge:

Plaintiff Bessie Brown Dawson, appearing *pro se,* filed the instant complaint seeking the return of $4,200 administratively forfeited by the United States Drug Enforcement Administration ("DEA").[1] Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), defendants move to dismiss or in the alternative for summary judgment pursuant to Federal Rule of Civil Procedure 56 on the ground that the Court lacks subject matter jurisdiction.

## BACKGROUND

On March 22, 1994, law enforcement officers of the DEA and state and local agencies executed a federal search warrant at Nathaniel Dawson Sr.'s home on Briggs Avenue in Bronx, New York. *See* Defendants' Statement Pursuant to Local Rule 3(g) ("Def. 3(g) Stmt.") ¶ 1; Plaintiff's Statement Pursuant to Local Rule 3(g) ("Pltff. 3(g) Stmt.") ¶ 1. Pursuant to the search, the DEA seized $4,200 allegedly owned by Nathaniel Dawson Sr.'s wife, Bessie Brown Dawson. Def. 3(g) Stmt. ¶ 1; Pltff. 3(g) Stmt. ¶ 1. On April 25, 1994, the DEA sent a written Notice of Seizure to plaintiff's Briggs Avenue address by certified mail, return receipt requested. *See* Def. 3(g) Stmt. ¶ 2. On May 3, 1994, plaintiff received this notice, and a signed receipt was thereafter returned to the DEA. Pltff. 3(g) Stmt. ¶ 5; Declaration of William J. Snider Sworn to August 31, 1995 ("Snider Decl.") ¶ 4(b). The Notice of Seizure stated the DEA's intention to forfeit the $4,200 and explained that plaintiff could file a petition for remission and/or mitigation of forfeiture with the DEA within thirty days of receipt of the Notice of Forfeiture, or in the alternative contest the seizure of the property in federal district court by filing a claim and cost bond within twenty days of the first publication of the seizure. *See* Snider Decl., Exh. 1. In addition, the notice provided that plaintiff could file an affidavit to proceed *in forma pauperis* if she was unable to afford a cost bond.[2] *Id.*

---

1. The complaint is entitled "Bessie Brown Dawson, Pro Se, Memorandum of Plaintiff's Statement Contest of Ownership and Claim of Ownership in Support to Dismiss the Complaint or in the Alternative for Summary Judgment." Complaint (unpaginated) ("Compl.").

2. Specifically, the Notice of Seizure provided, in pertinent part:

   If you want to request the remission (pardon) or mitigation of the forfeiture, submit a petition for remission or mitigation within thirty (30) days from your receipt of this notice. Follow the regulations set forth in Title 28,

Pursuant to 21 C.F.R. § 1316.75, the DEA published the Notice of Seizure and Intent to Forfeit in *USA Today*, a newspaper of general circulation in the Southern District of New York, beginning May 4, 1994 and for three consecutive weeks thereafter. Snider Decl. ¶ 4(c). The published notice stated that the last day to file a claim and either a bond or an *in forma pauperis* petition was May 24, 1994. *Id.* However, plaintiff did not file a claim, bond, or *in forma pauperis* petition within the specified time limit. Def. 3(g) Stmt. ¶ 23.

At some point after May 24, 1994, the DEA became aware that both Nathaniel Dawson, Jr. and Nathaniel Dawson, Sr. might also have an interest in the seized money. Snider Decl. ¶¶ 4(e)–(k). On August 2, 1994, the DEA sent three Notices of Seizure stating the DEA's intent to forfeit the money, to Nathaniel Dawson, Jr. and Sr. under separate cover at different addresses by certified mail, return receipt requested. Def. 3(g) Stmt. ¶¶ 9–16. All six notices were thereafter returned to the DEA undelivered. *Id.* ¶ 16.

On October 18, 1994, the DEA mailed under separate cover Notices of Seizure to Nathaniel Dawson, Jr. and Sr. at the Baltimore City Detention Center in Baltimore, Maryland. *Id.* ¶¶ 17–22. These notices stated the DEA's intention of forfeiting the currency and explained the procedure for petitioning for remission and/or mitigation of forfeiture or in the alternative, for the filing of a claim and either a cost bond or *in forma pauperis* petition. Snider Decl., Exhs. 16, 28; *see also*, n. 2, *supra.* Nathaniel Dawson, Sr. and Nathaniel Dawson, Jr. received these letters on October 21 and October 24, 1994, respectively, and the signed receipts were thereafter returned to the DEA. Def. 3(g) Stmt. ¶¶ 19, 22; Snider Decl., Exhs. 17, 19.

Neither Nathaniel Dawson, Jr. nor Sr. ever responded to the Notices of Seizure. Def. 3(g) Stmt. ¶ 23. On December 2, 1994, pursuant to 19 U.S.C. § 1609, the DEA forfeited the $4,200. *Id.* ¶ 24.

In or around November 1994, plaintiff completed and signed, and at some point thereafter mailed, a claim form and petition for remission to the United States Attorney's Office for the Southern District of New York. Snider Decl. Exh. 21. These forms were undated but had a Certificate of Service attached with a blank space for the date in November 1994 as follows: "this ___ day of November, 1994." *Id.* On these forms plaintiff stated that a $420 cost bond had been filed with the DEA as required by the Notice of Seizure but provided no date on which the cost bond had been filed. *Id.* ¶ 5. The United States Attorney's Office transferred the claim forms to DEA Forfeiture Counsel, who received them on February 27, 1995. Snider Decl. ¶ 4(m); Def. Memo. at 4.

On March 24, 1995, the DEA mailed plaintiff a letter stating that it had no record of a cost bond having been filed by plaintiff, that the currency had already been forfeited, and that the case was closed. Dawson received this letter on April 3, 1995. Def. 3(g) Stmt. ¶¶ 28–29; Pltff. 3(g) Stmt. ¶ 26.

On April 5, 1995, attorney Howard L. Cardin sent the DEA a letter on plaintiff's behalf requesting a review of the forfeiture deci-

C.F.R., Sections 9.1–9.7. State the facts and circumstances which you believe justify return of the property or return of your interest in the property. File an original petition and two copies with the DEA's Asset Forfeiture Section. No bond is necessary if only a petition is filed. **Pursuant to Title 28, C.F.R., Section 9.4(c), a petition for remission or mitigation of forfeiture shall be signed and sworn to by the petitioner.**

[I]n lieu of petitioning for remission or mitigation, you may contest the forfeiture of seized property in UNITED STATES DISTRICT COURT. To do so, you must file a claim of ownership and cost bond with the DEA.... If you are indigent (needy and poor) you may not have to post the bond. To request a waiver of the bond, you must fully disclose your finances in a signed statement called a "Declaration in Support of Request to Proceed *In Forma Pauperis*" along with a claim of ownership and property.... The claim of ownership, with either the bond or the "Declaration in Support of Request to Proceed *In Forma Pauperis*" must be filed within **twenty (20) days** of the **first date** of publication of the notice of seizure in the edition of the *USA Today* newspaper.... Except as noted above involving "Petitions for Expedited Release," all other documents must be submitted to the **Drug Enforcement Administration, Office of Chief Counsel, Asset Forfeiture Section, Caller Number 91017, Arlington VA 22202**....

*See id.*, Exh. 1 (emphasis original).

sion.[3] Snider Decl., Exh. 24. In the letter, Cardin conceded that plaintiff had never filed a cost bond but stated that she had filed an affidavit of indigency. *Id.* However, Cardin did not state the date on which plaintiff filed the affidavit of indigency. By letter to plaintiff in care of Cardin dated April 24, 1995, the DEA responded that because the claim had been untimely filed and sent to the incorrect agency, it had no effect on the forfeiture. Snider Decl., Exh. 25.

Thereafter, in an envelope postmarked May 2, 1995, the DEA received a bank check dated May 1, 1995 drawn on the account of B. Brown Dawson at the National Westminster Bank of New Jersey and payable to the "U.S. DEPT OF JUSTICE DEA" in the sum of $5,161.38.[4] *Id.* ¶ 37; Snider Decl., Exh. 26. By letter dated May 9, 1995, addressed to plaintiff in care of Cardin, the DEA returned the check and repeated that plaintiff's claim had been untimely filed. Def. 3(g) Stmt. ¶¶ 38–40. The letter and accompanying check were received on May 12, 1995. Snider Decl., Exh. 28.

On May 19, 1995, Cardin mailed the check to the Assistant United States Attorney ("AUSA") in Baltimore who had prosecuted both Nathaniel Dawson, Jr. and Sr. Def. 3(g) Stmt. ¶¶ 41–42. On June 2, 1995, the AUSA forwarded the check to the United States Attorney for the Southern District of New York. *Id.* ¶ 43. By letter dated August 24, 1995, the United States's Attorney for the Southern District of New York returned the check to Dawson, who received it on August 25, 1995. *Id.* ¶¶ 44–45; Pltff. 3(g) Stmt. ¶ 46; Snider Decl., Exh. D.

On December 28, 1995, Dawson filed the instant action seeking return of the $4,200 on the ground the money was seized pursuant to an illegal search in violation of her constitutional rights.[5] Compl. at 3, 4. In addition, Dawson's complaint, which the Court construes liberally, *see Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972), asserts that the $4,200 had been neither used nor acquired as a result of a drug related offense, and therefore was improperly forfeited. Pltff. 3(g) Stmt. ¶¶ 40, 42.

Defendants move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) or in the alternative for summary judgment pursuant to Federal Rule of Civil Procedure 56 on the ground that this Court lacks subject matter jurisdiction.[6] For the reasons that follow, defendants' motion is granted.

## DISCUSSION

Because the question of jurisdiction turns in part upon the statutes governing civil asset forfeitures, a brief review of that statutory and regulatory scheme is warranted. The currency at issue in the instant case was forfeited pursuant to Title 21 U.S.C. § 881(a)(6), which provides that all funds traceable as proceeds of a violation of the federal narcotics laws are subject to forfeiture by the United States. 21 U.S.C. § 881(a), (d). Such forfeitures are governed

3. Cardin had represented Nathaniel Dawson, Jr. and Nathaniel Dawson, Sr. in connection with their criminal prosecution in Maryland. *See* Gelfman Decl. ¶ 7. When questioned about whether he represented plaintiff in relation to the forfeiture proceeding, Cardin stated that he wrote the letter for her as a favor but did not represent her. *See id.*

4. Plaintiff seems to deny ever having mailed the check, claiming that to send an amount over ten times greater than the amount necessary to post a cost bond would have been nonsensical. *See* Pltff. 3(g) Stmt. ¶ 38.

5. Specifically, Dawson alleges that the currency forfeited had been illegally seized pursuant to a warrantless search in violation of her constitutional rights. *See* Compl. at 3–4. Dawson contends that the law enforcement officers conduct-

ing the search presented her with a fictitious search warrant which was in reality only an affidavit in support of a search warrant. *See* Pltff. 3(g) Stmt. ¶¶ 1–3. However, examination of the Affidavit for a Search Warrant reveals a signature and stamp of the Magistrate Judge endorsing the application for a search warrant. *See* Compl., Exh. A.

6. Because both parties filed statements or affidavits relating to defendants' motion as well as statements pursuant to Local Rule 3(g), the Court treats defendants' motion to dismiss as a motion for summary judgment pursuant to Federal Rule of Civil Procedure 12(c). *See, e.g., Hanson v. McCaw Cellular Communic.*, 77 F.3d 663 (2d Cir.1996).

by the customs laws relating to forfeiture. 21 U.S.C. § 881(d). Pursuant to DEA regulations and the customs laws in effect in 1994, the federal government may institute administrative forfeiture proceedings against property valued at $500,000 or less by sending written notice to all interested parties and publishing notice of the seizure and intent to forfeit the property. 19 U.S.C. § 1607; 21 C.F.R. § 1316.77(a). Once the federal government properly commences a civil forfeiture proceeding, the claimant has the opportunity to choose the forum of adjudication. *See* 28 C.F.R. §§ 9.1–9.7. A claimant can choose a judicial forum by filing a claim and cost bond within twenty days of the first date of publication. 19 U.S.C. § 1608; 21 C.F.R. § 1316.78. A timely filing of the claim and cost bond stops the administrative process, *see* 21 C.F.R. § 1316.76(b), and the matter is transferred to the United States Attorney who then must institute judicial forfeiture proceedings. 21 C.F.R. § 1316.78.

If the claimant fails to timely file a claim and cost bond, the property is administratively forfeited at the end of the twenty day period. 19 U.S.C. § 1609; 21 C.F.R. § 1316.77. However, a claimant may thereafter request "remission" and/or mitigation of the forfeiture by filing a petition within thirty days of receipt of notice. 21 C.F.R. § 1316.80(a). With regard to property deemed forfeited, the DEA has broad discretion in deciding whether to grant a petition for mitigation or remission. 28 C.F.R. § 9.5. Here, in the Notice of Forfeiture, the DEA also provided that plaintiff could file a petition to proceed *in forma pauperis* in lieu of a cost bond.[7]

■ This statutory and regulatory scheme affords the claimant sufficient notice and opportunity to test the legality of the seizure in the forfeiture proceeding. *See United States v. One 1987 Jeep Wrangler,* 972 F.2d 472, 479 (2d Cir.1992); *In re Harper,* 835 F.2d 1273, 1274 (8th Cir.1988). However, an administrative forfeiture removes the res from the district court. *See Onwubiko v. United States,* 969 F.2d 1392, 1398 (2d Cir.1992);

*United States v. Ten Thousand Dollars in United States Currency,* 860 F.2d 1511, 1513 (9th Cir.1988). As a result, once the administrative process has begun, a federal district court generally lacks subject matter jurisdiction to review the merits of an administrative forfeiture decision, *see Onwubiko,* 969 F.2d at 1398; *1987 Jeep,* 972 F.2d at 479; *In re Matter of Sixty–Seven Thousand Four Hundred Seventy Dollars ($67,470.00),* 901 F.2d 1540, 1543 (11th Cir.1990); *United States v. One Buick Riviera Automobile,* 560 F.2d 897, 900 (8th Cir.1977); *United States v. Pinilla,* No. 93 CR. 341 (PKL), 1996 WL 145953, at * 2 (S.D.N.Y. Apr. 1, 1996), including constitutional challenges to the search and seizure. *See Linarez v. Department of Justice,* 2 F.3d 208, 213 (7th Cir.1993).

■ The Court does, however, have limited jurisdiction to review a procedurally defective administrative agency decision. *See Onwubiko,* 969 F.2d at 1398; *1987 Jeep,* 972 F.2d at 480; *Scarabin v. Drug Enforcement Administration,* 919 F.2d 337, 338 (5th Cir. 1990); *One 1977 Volvo 242 DL v. United States,* 650 F.2d 660, 662 (5th Cir.1981); *United States v. Pinilla,* No. 93 CR. 341 (PKL), 1996 WL 145953, at * 2, 3 (S.D.N.Y. April 1, 1996), *Clow v. Nelson,* 579 F.Supp. 981, 983 (W.D.N.Y.1984). Such review, however "is limited to determining whether the agency followed the proper procedural safeguards when it declared [claimant's] property summarily forfeited," *1987 Jeep,* 972 F.2d at 480 (quoting *Scarabin,* 919 F.2d at 338), or whether the agency refused to consider a request that it exercise its discretion. *See Onwubiko,* 969 F.2d at 1398; *Matter of $67,-470.00,* 901 F.2d at 1544.

■ Where, as here, plaintiff does not dispute that she actually received the DEA's Notice of Forfeiture on May 3, 1994, that notice was properly given, and that she failed to file a claim, cost bond, or *in forma pauperis* petition within twenty days—or a petition for remission and/or mitigation within thirty days—of receipt of that notice, plaintiff has failed to state a cognizable claim that defendants failed to follow the proper proce-

---

7. The option of filing an *in forma pauperis* petition in lieu of a cost bond is set forth in the Notice of Forfeiture form sent to plaintiff by the DEA, *see* n. 2, *supra,* but is codified in neither the United States Code nor the Code of Federal Regulations governing DEA forfeiture.

dural safeguards or violated her constitutional rights to due process.[8] *See Lopes v. United States,* 862 F.Supp. 1178, 1184 (S.D.N.Y. 1994).[9]

Nor has plaintiff alleged any facts affording a rational inference that the government created an "insuperable obstacle" to her right to contest her claims in federal court by, for example, seizing all of her assets with knowledge that she would thereby be precluded from contesting the forfeiture in federal court due to her inability to file a cost bond. *Onwubiko,* 969 F.2d at 1399 (quoting *Lee v. Thornton,* 538 F.2d 27, 33 (2d Cir. 1976)). The Notice of Forfeiture clearly advised plaintiff that she could proceed without a cost bond by filing a timely *in forma pauperis* application. This is especially true here since plaintiff drew a bank check for over $5,000 payable to the DEA and Department of Justice after the forfeiture.

In any event, even if financially unable to post a bond, plaintiff had ample opportunity to challenge the forfeiture in court. Although not statutorily required to do so the DEA in its discretion gave plaintiff the option of filing a petition to proceed *in forma pauperis* in lieu of posting a cost bond, thereby eliminating any financial constraints upon plaintiff's ability to choose a judicial forum. Nonetheless, after receiving proper notice, plaintiff failed to timely file either a claim with a bond or an *in forma pauperis* petition, or a petition for remission and/or mitigation. This resulted in the money being administratively forfeited.

It follows that this Court lacks jurisdiction to grant plaintiff's claim for return of her currency, whether construed liberally to be a claim asserted under the Tucker Act, 28 U.S.C. § 1346, predicated upon an alleged abuse of discretion in denying her untimely petition for remission, or a claim asserted pursuant to *Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), alleging that the DEA agents violated plaintiff's constitutional rights. *See Onwubiko* 969 F.2d at 1399; *Linarez v. Department of Justice,* 2 F.3d 208, 213 (7th Cir.1993); *United States v. Pinilla,* 1996 WL 145953 at *2; *Reinoso v. Drug Enforcement Administration,* No. 93 CIV 1516 (KTD), 1994 WL 708139, *3 (S.D.N.Y. December 19, 1994).

### CONCLUSION

For the reasons set forth above, defendants' motion for summary judgment shall be and hereby is granted. The Clerk of Court is directed to enter judgment and close the above-captioned action.

It is **SO ORDERED.**

---

**8.** Nor can the Court accept plaintiff's argument that the November 1994 claim and petition for remission were timely because they were filed within her husband's deadlines, which expired on or about November 10 and 20, 1994, respectively. Plaintiff cites no authority, and the Court is aware of none, which would allow her to avail herself of her husband's time limit. This is especially true since plaintiff alleges that the currency was her own and filled out the forms in her own name. Moreover, because plaintiff mailed these forms to the wrong address, the DEA did not receive them until February 27, 1995, after the property had been forfeited. In addition, plaintiff incorrectly stated on the claim that she had filed a cost bond and thereafter alleged that she had actually filed an application to proceed *in forma pauperis,* but provided no date on which she filed the application.

**9.** Plaintiff's claim that the statutory provisions governing forfeiture notice are unconstitutional is without merit, especially where, as here, plaintiff acknowledges timely receipt of the Notice of Forfeiture. *See Weigner v. City of New York,* 852 F.2d 646, 649 (2nd Cir.1988) (citing *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950)).