Luis Alberto RODRIGUEZ,
Petitioner–Appellant,

v.

UNITED STATES DEPARTMENT OF
JUSTICE and Drug Enforcement Ad-
ministration, Respondents–Appellees.

No. 99–6337.

United States Court of Appeals,
Second Circuit.

Feb. 22, 2001.

Carl Soller, Esq., Soller, Shayne & Horn, New York, NY, for appellants.

Sandra L. Levy, Assistant United States Attorney; Loretta E. Lynch, United States Attorney, Deborah B. Zwany and Arthur P. Hui, Assistant United States Attorneys, on the brief, Brooklyn, NY, for appellees.

Present JOHN M. WALKER, JR., Chief Judge, MINER and POOLER, Circuit Judges.

## SUMMARY ORDER

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of said district court be and it hereby is AFFIRMED.

Petitioner-appellant Luis Rodriguez appeals from an August 13, 1999 judgment of the United States District Court for the Eastern District of New York (Amon, *J.*), dismissing the action for lack of subject matter jurisdiction pursuant to Fed. R.Civ.P. 12(b)(1). On appeal, Rodriguez argues: (1) that the district court should have entertained Rodriguez's challenge, pursuant to Fed.R.Crim.P. 41(e), to the legal sufficiency of the currency seizure; (2) that forfeiture of the currency was improper after Rodriguez expressed an interest in the property; and (3) that the administrative proceedings were procedurally flawed.

On November 7, 1997, Rodriguez and his daughter arrived at Laguardia Airport in New York City in order to embark on a flight to Miami. After passing through security, plaintiff was stopped and questioned by Port Authority detectives and Brian Fitzpatrick, Special Agent in the Drug Enforcement Agency ("DEA"). The investigation revealed that Rodriguez was carrying $366,280 in U.S. currency, largely in small bills. Rodriguez, who speaks only Spanish, was questioned through an interpreter. Rodriguez told investigators that the cash was related to his jewelry business, but was unable to give specifics regarding the business. Plaintiff and his daughter were permitted to leave, but Special Agent Fitzpatrick seized the currency. On November 10, 1997, a trained police dog reacted positively to the presence of narcotics on the bills.

On December 15, 1997, the DEA sent three Notices of Seizure by certified mail: one to plaintiff which was returned to the DEA as undelivered, one to Rodriguez's daughter which appears to have been received, and one to Rodriguez's first attorney which was delivered. Beginning December 24, 1997, the DEA published notice of the seizure for three successive weeks in *USA Today*.

On January 2, 1998, the DEA sent another Notice of Seizure to plaintiff's new attorney, Carl Soller. A cover letter indicated that although the notice stated that all parties have 20 days from the first date of publication in *USA Today*, the DEA would provide Rodriguez until January

28th to respond, 20 days from receipt of the notice sent to Soller. On January 8, 1998, Soller argued, by letter, that the notice was deficient in several respects. On January 21, 1998, the DEA responded with a letter stating that a federal court had deemed the content of the notice constitutionally sufficient.

On February 12, 1998, approximately two weeks after the DEA deadline, Rodriguez filed in district court a motion for return of property pursuant to Fed. R.Crim.P. 41(e). On February 23, 1998, the DEA formally processed forfeiture of the currency to the United States. On March 20, 1998, the government moved to dismiss the 41(e) action, and on August 12, 1998, the district court dismissed the action for lack of subject matter jurisdiction pursuant to Fed.R .Civ.P. 12(b)(1).

■ This court reviews the grant of dismissal for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) *de novo*. *See Jaghory v. New York State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir.1997).

■ Congress has authorized the DEA to seize money furnished or intended to be furnished in exchange for a controlled substance. *See* 21 U.S.C. § 881(a)(6). If the currency is less than $500,000, the DEA may proceed administratively. *See* 19 U.S.C. § 1607; *Boero v. Drug Enforcement Admin.*, 111 F.3d 301, 304 (2d Cir. 1997). An administrative forfeiture commences with the publication of notice. *See* 19 U.S.C. § 1607. Within 20 days of the first publication of notice, the claimant may contest the forfeiture by filing a claim and a cost bond with the DEA. *See* 19 U.S.C. § 1608; *Boero*, 111 F.3d at 304. If the claimant fails to file a claim and cost bond, administrative forfeiture occurs by default. *See* 19 U.S.C. § 1609; *Boero*, 111 F.3d at 304.

■ Aside from limited exceptions not relevant here, *see Boero*, 111 F.3d at 305, federal courts have no jurisdiction to review the merits of an administrative forfeiture proceeding outside of the claim and bond procedure. *See U.S. v. One 1987 Jeep Wrangler*, 972 F.2d 472, 480 (2d Cir. 1992). The filing of a claim and bond stops the administrative procedure and compels the DEA to refer the matter to the relevant United States Attorney, who is required to initiate judicial forfeiture proceedings. *See Boero*, 111 F.3d at 304–05; *see also One 1987 Jeep Wrangler*, 972 F.2d at 479. In judicial forfeiture proceedings the plaintiff can challenge the legality of the seizure. *See, e.g., United States v. $37,780 in United States Currency*, 920 F.2d 159, 162–63 (2d Cir.1990). Because Rodriguez failed to file a claim and cost bond by January 28th, the district court could not adjudicate the merits of the underlying seizure and properly dismissed the action for want of subject matter jurisdiction.

■ On appeal, Rodriguez argues that the district court should have entertained his challenge to the legality of the currency seizure based on his claim that, at the time of the seizure, probable cause was lacking. He further contends that the 41(e) motion was the only procedure in which he could challenge the existence of probable cause at the time the seizure occurred. However, the law is clear that "once the administrative process has begun, the district court loses subject matter jurisdiction to adjudicate the matter in a peripheral setting such as a Rule 41(e) motion." *One 1987 Jeep Wrangler*, 972 F.2d at 479. The law is equally clear that even if Rodriguez had timely filed a claim and cost bond, thus enabling the district court to review the merits of the seizure, the government, during the judicial forfeiture proceeding, could proffer evidence gathered after the initial seizure to prove that it had probable cause at the time of

the initial seizure. *See $37,780 in United States Currency*, 920 F.2d at 163–64. Thus, Rodriguez is correct that the claim and bond procedure precludes an evaluation of probable cause that excludes circumstances beyond those that existed at the time of the seizure. To be sure, the effect of the procedural setting which this case presents is that Rodriguez is unable to mount a challenge to the seizure based on the probable cause determinants as they existed at the time of the seizure. But the fact that the appropriate rules, properly applied, yield a result not to Rodriguez's liking is not a reason for us to engage in a course of remedial legislation. His remedy, if any, lies with Congress not with the courts.

This court retains jurisdiction for the limited purpose of determining whether administrative forfeiture was procedurally proper. *See Onwubiko v. United States*, 969 F.2d 1392, 1398 (2d Cir.1992). Rodriguez argues that the notices of the seizure were deficient in both form and content. We disagree. At the very least, Rodriguez received actual notice of the initiation of the forfeiture proceedings through his attorney on January 8, 1998. Moreover, as the district court noted, the notices were also sufficient because they set forth in understandable terms the nature and authority for the forfeiture proceedings and the means by which Rodriguez could (a) challenge the forfeiture by filing a claim and cost bond and/or (b) seek remission and mitigation. *See, e.g., Sterling v. United States*, 749 F.Supp. 1202, 1210–11 (E.D.N.Y.1990).

We have considered Rodriguez's remaining arguments and consider them to be without merit. Accordingly, we AFFIRM the judgment of the district court.