Geraldo Wagner Vasconcelos LOPES, Jaime Martins Calais, Sebastiao Marcena, Idelfonso Marques Do Amaral, Marcelo Antonio Dos Santos Ferriera, Jorge Dorea Viana, Helcio De Souza Figueiredo, Luiz Eduardo Amaral, Newton Jose Leite and Juan Carlos Matos, Plaintiffs,

v.

UNITED STATES of America, Department of the Treasury and Internal Revenue Service, Defendants.

No. 93 Civ. 2181.

United States District Court, S.D. New York.

Sept. 28, 1994.

**1180**

Bruce L. Stein, Aufrichtig, Stein & Aufrichtig, P.C., New York City, for plaintiffs.

Edward Scarvalone, Asst. U.S. Atty., S.D.N.Y., U.S. Dept. of Justice, New York City, for defendants.

## OPINION AND ORDER

SCHWARTZ, District Judge:

Plaintiffs bring this action against defendants United States of America, the Department of the Treasury and the Internal Revenue Service (collectively, "the Government") for the return of their 1992 Mercedes–Benz model 500 SEL automobile (the "Mercedes") (or its cash equivalent), which was seized pursuant to a warrant in connection with a civil forfeiture.

The Government moves pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the amended complaint (the "Complaint") for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted. In the alternative, the Government moves pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment. For the reasons set forth below, the Government's motion to dismiss the Complaint for lack of subject matter jurisdiction is granted, except with respect to the plaintiffs' First Claim, alleging that notice of the seizure was inadequate, as to which summary judgment is granted.

## FACTS

The Complaint alleges that jurisdiction of this Court is based upon the existence of a federal question under 28 U.S.C. § 1331, the Administrative Procedure Act (the "APA"), 5

U.S.C. § 702, the Federal Torts Claim Act (the "FTCA"), 28 U.S.C. § 1346(b) and the Fifth and Eighth Amendments to the United States Constitution.

■ All of the plaintiffs (collectively, the "Plaintiffs") are citizens of Brazil and all, with the exception of Luiz Eduardo Amaral ("Amaral"), are residents of Brazil. Amaral resides in Ellenville, New York.[1]

On or about January 24, 1992, Plaintiffs, pursuant to an agreement among themselves, purchased the Mercedes from Jack Perry Ford, Inc. in Goshen, New York (the "Dealership") for the price of $96,693.25. The agreement is entitled "Partnership Upon the Purchase of an Automobile" and is dated January 24, 1992 (the "Agreement"). ·See Complaint at Exhibit A. The Agreement provides, among other things: "The proprietorship of this automobile will hereby be granted temporarily to Mr. Geraldo Wagner Vasconcelos Lopes or Mr. Luiz Eduardo Amaral who will be responsible for the care taken and conservancy [sic] of this automobile". Plaintiffs allege that the Mercedes was purchased as part of a business venture which contemplated that the Mercedes would be exported to Brazil and then sold.

Plaintiffs initially sought to purchase the Mercedes with cash but the Dealership refused to accept cash. Plaintiffs do not dispute that they purchased certain bank checks in order to pay for the automobile: two bank checks drawn on Pawling Savings Bank for $9,900 each; two bank checks drawn on Ellenville National Bank for $9,000 each; and two bank checks drawn on Ellenville National Bank for $9,900 each. Affidavit of Special Agent Richard J. Pilek of the Criminal Investigation Division of the Internal Revenue Service (the "IRS") sworn on March 31, 1992 ("Pilek Aff.") at ¶ 8. The balance was paid with four American Express money orders for $1,000 each, $25,300 in currency (in one hundred dollar bills) and the initial $9,900 deposit which was paid with sequentially numbered one hundred dollar bills. *Id.* at

---

1. In deciding the motion to dismiss, the Court accepts Plaintiffs' allegations as true, construes all factual allegations in Plaintiffs' favor and may dismiss the Complaint only if it appears beyond doubt that Plaintiffs could prove no set of facts in support of their claim which would entitle them to relief. *See e.g., Keenan v. D.H. Blair & Co.,* 838 F.Supp. 82, 88 (S.D.N.Y.1993) (citations omitted).

¶¶ 7–8.[2] Plaintiffs allege that they had no knowledge of the filing requirements governing purchases of bank checks for cash in excess of $10,000.

The Mercedes was registered in Amaral's name while the bill of sale listed all ten plaintiffs as the purchasers.

On April 9, 1992, United States Magistrate Judge Mark D. Fox issued a warrant authorizing the IRS to seize the Mercedes (the "Warrant"). The warrant was based upon the affidavit of Special Agent Timothy J. Ryan of the Criminal Investigation Division of the IRS (which incorporated the Pilek Affidavit) attesting to the probable cause belief that the Mercedes was subject to seizure and civil forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) and (b).[3] The affidavits of

Special Agents Ryan and Pilek set forth the agents' beliefs that there was probable cause that the Mercedes constituted property derived from the proceeds of structured financial transactions in violation of 31 U.S.C. §§ 5313(a) and 5324.[4]

 On or about April 9, 1992, pursuant to the Warrant, the Mercedes was seized by the IRS from 14 Ivy Lane, Washingtonville, New York. On April 13, 1992, notice of the seizure was sent by certified mail to plaintiff Amaral. The notice advised Amaral that the Mercedes was seized under 18 U.S.C. § 981, because it was involved in, or was traceable to, a violation of 31 U.S.C. § 5324 (an illegally structured currency transaction) and 18 U.S.C. § 1956 (money laundering).[5] The notice further stated that the IRS was review-

---

**2.** The difference between Plaintiffs' and the Government's statements with respect to the amount paid for the Mercedes is irrelevant because the sum of the bank checks and money orders is not disputed.

**3.** 18 U.S.C. § 981(a)(1)(A) provides that the following property is subject to forfeiture to the United States:

Any property, real or personal, involved in a transaction or attempted transaction in violation of section 5313(a) or 5324(a) of title 31, or of section 1956 or 1957 or this title, or any property traceable to such property.

18 U.S.C. § 981(b)(1)(A) further provides:

[any property] subject to forfeiture to the United States under subparagraph (A) or (B) or subsection (a)(1) of this section—(i) may be seized by the Attorney General; or (ii) in the case of property involved in violation of section 5313(a) or 5324 of title 31, United States Code, or section 1956 or 1957 of this title investigated by the Secretary of the Treasury or the United States Postal Service, may be seized by the Secretary of the Treasury or the Postal Service;

**4.** 31 U.S.C. § 5313(a) requires domestic banks to adhere to reporting requirements imposed by the Treasury Department. By regulation, currency transactions of more than $10,000 must be reported. 31 C.F.R. § 103.22.

31 U.S.C. § 5324(a)(3) makes it unlawful to "structure or assist in structuring, or attempt to structure or assist in structuring, any transaction with one or more domestic financial institutions." With the purpose of evading the reporting requirements of 31 U.S.C. § 5313(a). The term "structuring" is defined to include "the breaking down of a single sum of currency exceeding $10,000 into smaller sums, including sums at or below $10,000...." 31 C.F.R. § 103.11(p).

**5.** No criminal charges have been filed against any of the Plaintiffs in connection with the purchase of the Mercedes. The Court observes that despite Plaintiffs' protestations to the contrary, a civil forfeiture proceeding is an *in rem* action against property, rather than a proceeding against the owner. *See United States v. One 1987 Jeep Wrangler Auto.*, 972 F.2d 472, 476 (2d Cir. 1992) (citations omitted). Thus, "[t]he Government need not prove, within the criminal justice system that the owner committed a crime" in order to proceed with a civil forfeiture. *Id.* (citing *United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 361, 104 S.Ct. 1099, 1104, 79 L.Ed.2d 361 (1984)). Indeed an acquittal on a criminal charge does not bar a civil forfeiture proceeding. *See United States v. United States Currency in the Amount of $228,536.00*, 895 F.2d 908, 916 (2d Cir.), *cert. denied*, 495 U.S. 958, 110 S.Ct. 2564, 109 L.Ed.2d 747 (1990) (citations omitted). Moreover, as the Second Circuit has held, "[a] forfeiture proceeding may even be commenced where no criminal action is brought." *Jeep Wrangler*, 972 F.2d at 476.

Similarly the Court observes that Plaintiffs' allegations that they had no knowledge of the filing requirement and no intent to violate the law is irrelevant. *Cf. Ratzlaf v. United States*, — U.S. —, — n. 16, 114 S.Ct. 655, 662 n. 16, 126 L.Ed.2d 615 (1994) (no willfulness requirement for civil forfeiture for violations of 31 U.S.C. §§ 5313(a) or 5324). Indeed, Plaintiffs concede that they are "not contesting the validity of the seizure (except for the matter of the defective notice) ..." Plaintiffs' Memorandum of Law at 12. Finally, Plaintiffs' arguments with respect to the fact that no criminal action has been instituted and their ignorance of the law are not properly before this Court because they suffer from the jurisdictional infirmities discussed below.

ing the facts to determine whether the Mercedes should be forfeited to the Government. *Id.*

On May 15, 1992, the IRS sent Amaral another notice advising him that the Mercedes was in fact subject to forfeiture by the Government and that administrative proceedings had been instituted with respect to the forfeiture (the "Notice of Seizure and Forfeiture"). The Notice of Seizure and Forfeiture further apprised Amaral that a claimant could challenge the forfeiture either by way of an administrative review or a judicial determination of the forfeiture. It also expressly stated that if a judicial determination of whether the Mercedes should be forfeited was sought, a claim and cost bond was required to be filed by June 3, 1992. The text of the Notice of Seizure and Forfeiture, in pertinent part, is set forth in the margin.[6]

Plaintiffs do not challenge the statements in the Government's Local Rule 3(g) Statement that the IRS sent a copy of the Notice of Seizure and Forfeiture to Richard Newberg, Esq. ("Newberg") an attorney representing Amaral. During the time Newberg was representing Amaral in connection with the seizure, Newberg also represented the nine other plaintiffs. Government's Local Rule 3(g) Statement at ¶¶ 8-9. It is also not disputed that in addition to providing written notice to Amaral and Newberg the IRS published notice of the forfeiture on May 20, May 27, and June 3, 1992 in *The Times*

*Herald Record,* a Middletown, New York newspaper. The Government does not contend that written notice was sent to any of the Plaintiffs other than Amaral nor does the Government dispute statements made in Amaral's Affidavit, sworn to on October 12, 1993, ("Amaral Affidavit"), that Amaral provided Agent Ryan with the names and addresses of the nine other plaintiffs. *See* Amaral Affidavit at ¶¶ 10–13.

Plaintiffs concede that Amaral received notice on April 13, 1992 of the commencement of the forfeiture proceedings. Plaintiffs, in their Complaint contend that no plaintiff, other than Amaral, "received actual or constructive notice of the commencement of a forfeiture proceeding." Complaint at ¶ 12. Plaintiffs' Memorandum of Law in opposition to the Government's motion, in contrast, concedes that all of the plaintiffs *had* actual notice of the forfeiture proceedings:

> ... That other owners were advised by Luiz Amaral of the seizure and joined the petition for remission does not excuse the government's improper acts. The mere fortuitous circumstance that Mr. Amaral advised the other owners ...

Plaintiffs' Memorandum of Law at 28.

Plaintiffs, in fact, filed a timely petition, dated June 5, 1992, for remission or mitigation of the forfeiture of the Mercedes (the "Petition"). The Petition was submitted by Newberg on behalf of all ten plaintiffs and

---

**6.** The Notice of Seizure and Forfeiture provides: The property referred to above and described in the enclosed Notice of Seizure is subject to forfeiture to the United States Government, in that it was involved in a transaction in violation of Title 31, United States Code, Section 5324. Title 18, United States Code, Section 981 provides that any property involved in a transaction or attempted transaction in violation of Title 31 USC 5324, or any property traceable to such property, may be seized and forfeited to the United States Government.

. . . . .

As to administrative review, a petition for remission or mitigation of forfeiture of the property may be filed with this office any time before final disposition of the property pursuant to administrative forfeiture; or you may submit to this office before *June 3, 1992* an offer in compromise to settle the forfeiture liability incurred by the property.

If you desire a judicial determination of the matter, a claim and cost bond must be filed

*before* the forfeiture date, June 3, 1992. You are cautioned that the timely filing of a claim and cost bond is a necessary action for obtaining a judicial determination. Both the claim and cost bond should be executed in quadruplicate. Without the timely filing of a claim and cost bond by you or any other person, the property will be forfeited administratively on June 3, 1992.

The administrative forfeiture is not subject to judicial review. If a claim and cost bond is timely filed, any pending petition for remission or mitigation of forfeiture of the property, or an offer in compromise to settle the forfeiture liability will be transferred to the United States Attorney for appropriate action.

You are cautioned that the filing of a petition for remission or mitigation of forfeiture, or an offer in compromise to settle the forfeiture liability, does not extend, the time for filing a valid claim and cost bond.

was signed by seven of the 10 plaintiffs.[7] Plaintiffs did not file either a claim or cost bond with the IRS as required for a judicial determination of a forfeiture.

In response to the Petition, the IRS, in a letter dated November 13, 1992, advised Newberg that the Petition would be denied in the amount of $61,600 (corresponding to the amount of bank checks and money orders used in purchasing the Mercedes) and that the balance of any proceeds from the sale of the Mercedes would be returned to Plaintiffs. Plaintiffs filed a Petition for Reconsideration on December 2, 1992. That petition was denied in a letter dated June 9, 1993.

In this action, Plaintiffs challenge the forfeiture on the grounds that: (1) notice of the seizure was inadequate and Plaintiffs' due process rights were violated; (2) the denial of Plaintiffs' Petition violates Plaintiffs' rights under the Just Compensation Clause of the Fifth Amendment because they were "good faith, innocent owners" of the Mercedes; (3) the Government's failure to provide Plaintiffs with the reason for its denial of their Petition constitutes a denial of Plaintiffs' due process rights; (4) the Governments' forfeiture of the Mercedes constitutes conversion under the FTCA; (5) the Governments' forfeiture of the Mercedes constitutes an excessive fine under the Eighth Amendment. Plaintiffs seek the return of the Mercedes or, in the alternative, the Mercedes' purchase price together with an unspecified amount of damages, costs, disbursements and legal fees.

*DISCUSSION*

The Government moves pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the Complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted. In the alternative, the Government moves pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment.

The central issue before the Court is whether a district court has subject matter jurisdiction over an action to recover a vehicle seized and forfeited by the IRS after the IRS has considered and denied a plaintiff's petition for remission or mitigation of the forfeiture.

### A. *Structured Transactions and Civil Forfeiture*

The Supreme Court has summarized the law's prohibition against "structured" transactions:

> Federal law requires banks and other financial institutions to file reports with the Secretary of the Treasury whenever they are involved in a cash transaction that exceeds $10,000. 31 U.S.C. § 5313; 31 CFR § 103.–22(a) (1993). It is illegal to "structure" transactions—*i.e.*, to break up a single transaction above the reporting threshold into two or more separate transactions—for the purpose of evading a financial institution's reporting requirement. 31 U.S.C. § 5324.

*Ratzlaf v. United States,* —— U.S. ——, ——, 114 S.Ct. 655, 657, 126 L.Ed.2d 615 (1994); *see also* n. 4 *supra.*

Section 981(a)(1)(A) of Title 18 subjects to forfeiture "[a]ny property, real or personal, involved in a transaction or attempted transaction in violation of section 5313(a) or 5324 of title 31 ... or any property traceable to such property."

Section 981(d) incorporates, by reference, the customs forfeiture procedures of 19 U.S.C. §§ 1602–1619. Those procedures provide that any property with a value of less than $500,000 may be administratively forfeited. 19 U.S.C. §§ 1607, 1609. Section 1607 provides for written notice to individuals with an interest in the property as well as notice by publication.

The claimant has the option of challenging the forfeiture either in federal court or before the Treasury Department in an administrative proceeding. *See* 19 U.S.C. §§ 1608, 1618. To initiate an action in federal court, the claimant must file a claim and cost bond within twenty days after the first publication

---

**7.** According to the Petition, three of the ten Plaintiffs were in Brazil and therefore did not sign the Petition. *See* Petition at ¶ 11. Additionally, according to the Petition, on May 18, 1992, the seven plaintiffs who were in the United States met with an Assistant United States Attorney and voluntarily answered questions with respect to the Petition. *Id.*

of the notice of the forfeiture. 19 U.S.C. § 1608. Upon the timely filing of a claim and cost bond, the United States attorney for the district in which the seizure occurred is obliged to commence a forfeiture action. *Id.* If the claimant does not timely file a claim and cost bond, the appropriate customs officer shall declare the property forfeited. 19 U.S.C. § 1609(a). Such a declaration of forfeiture shall have the same force and effect as a final decree and order of forfeiture in a judicial forfeiture proceeding in a district court. 19 U.S.C. § 1609(b).

Instead of filing a claim and cost bond, a claimant may file a petition for the remission or mitigation of the forfeiture with the Treasury Department. 19 U.S.C. § 1618. If the Treasury Department finds that there was no intent to violate the applicable law, or finds mitigating circumstances to be present, it may remit or mitigate the forfeiture upon terms and conditions that it deems reasonable and just. *Id.*

Here, as discussed above, Plaintiffs elected to file a petition for remission or mitigation with the IRS rather than to initiate a federal court action by timely filing a claim and cost bond.

### B. *Jurisdiction of this Court*

As a general rule, "a federal court lacks jurisdiction to review the merits of administrative forfeiture decisions once the administrative process has begun." *United States v. One 1987 Jeep Wrangler Auto.*, 972 F.2d 472, 480 (2d Cir.1992). "To hold otherwise would be to ignore the jurisprudential particularities of actions *in rem*". *Id.* at 479 (holding that "once the administrative process had begun, the district court loses subject matter jurisdiction to adjudicate the matter in a peripheral setting such as a [Federal Rule of Criminal Procedure] 41(e) motion") (citations omitted).

Moreover, the decision whether to remit or mitigate the forfeiture is the domain of the forfeiting agency, and once the agency has made a determination on the petition for remission or mitigation, courts generally have no power to review that decision. *See Schrob v. Catterson*, 948 F.2d 1402, 1412 n. 9

(3d Cir.1991) ("Generally, once the government has made an administrative determination on the petition, courts have no power to review that decision") (citations omitted); *Averhart v. United States (In the Matter of Sixty Seven Thousand Four Hundred Seventy Dollars ($67,470.00)*, 901 F.2d 1540, 1543–44 (11th Cir.1990) ("federal common law consistently has held that federal courts lack jurisdiction to review the merits of a forfeiture decision that the Secretary has reached in the exercise of his discretion.... Moreover, federal courts are generally prohibited from reviewing agency forfeiture decisions even where it is alleged that the Secretary abused his discretion") (citations omitted); *LaChance v. Drug Enforcement Admin.* 672 F.Supp. 76, 79 (E.D.N.Y.1987) ("[r]emission of a forfeiture is a matter of grace and discretion delegated solely to the exclusive authority of the administrative agency"); *see also* 19 U.S.C. § 1618 (forfeiting agency "may remit or mitigate" the forfeiture "upon such terms and conditions as [it] deems reasonable and just").

Here, there is no dispute that an administrative process was initiated. Plaintiffs filed a timely petition for remission or mitigation of the forfeiture of the Mercedes, thereby triggering that process pursuant to 19 U.S.C. § 1618. In response to the Petition, the IRS advised Newberg that the Petition would be denied in the amount of $61,600 (corresponding to the amount of bank checks and money orders used in Plaintiffs' "structured" transaction) and that the balance of any proceeds from the sale of the vehicle would be remitted to Plaintiffs. Plaintiffs subsequently filed a Petition for Reconsideration, which was denied.

In sum, Plaintiffs, having pursued their administrative remedy by filing a petition for remission or mitigation, and having failed to file a claim and cost bond, are deemed to have elected to forego judicial review of the forfeiture pursuant to 19 U.S.C. § 1608. This Court, therefore, lacks subject matter jurisdiction. *See LaChance*, 672 F.Supp. at 80 ("plaintiff has elected his administrative remedy instead of a judicial proceeding, and this operates to foreclose his application before the court") (citations omitted).

■ Courts, however, have recognized an exception to the general rule that a federal court lacks subject matter jurisdiction to review the merits of an administrative forfeiture decision once the administrative process has begun if there was a procedural deficiency in the administrative process. *See Jeep Wrangler,* 972 F.2d at 480 ("an exception exists which allows an appellate court jurisdiction to review a decision of an administrative agency which amounts to a refusal to exercise its discretion.... Such review, however, is, 'limited to determining whether the agency followed the proper procedural safeguards when it declared [claimant's] property summarily forfeited'") (citations omitted). In other words, "if an administrative forfeiture is procedurally deficient, the court has jurisdiction to correct the deficiency." *Onwubiko v. United States,* 969 F.2d 1392, 1398 (2d Cir.1992). The Second Circuit and courts within this Circuit have found subject matter jurisdiction to lie in actions concerning procedural deficiencies with respect to adequacy of notice and arbitrary denials of opportunities to be heard. *See Jeep Wrangler,* 972 F.2d at 480 (judicial review was permitted because DEA's decision to treat plaintiff's notice of claim as relating to an earlier notice of seizure not at issue was arbitrary and denied plaintiff an opportunity to be heard); *Onwubiko,* 969 F.2d at 1399 (judicial review permissible based on government's "Dickensian" requirement that plaintiff visiting the United States file $250 bond, despite the government's having seized all of plaintiff's money); *Taft v. United States,* 824 F.Supp. 455, 462 (D.Vt.1993) (holding that "[n]owhere is this remedial exception more necessary than in the case where the initial notice to an interested party is inadequate to properly advise him or her of the appropriate procedures and remedies"); *LaChance,* 672 F.Supp at 79 (stating that "limited exception exists to this rule of

judicial non-review of agency forfeitures where it can be shown that the agency has refused to consider the petition for remission or that there are concessions indicating that the agency has a formalized invariable policy of denying petitions, and, in fact, failed to give any reason for denial of the petition in question").

Plaintiffs' First Claim, alleging that the Government's notice of seizure was inadequate, fits squarely in the aforementioned exception. Because Plaintiffs' Second, Third, Fourth and Fifth Claims do not allege procedural deficiencies (or claims analogous to procedural deficiencies), these claims do not fall within the recognized exception and are dismissed for lack of subject matter jurisdiction.[8] Finally, the Court observes that with respect to Plaintiffs' Fifth Claim, which alleges an excessive fine in violation of the Eighth Amendment, the Supreme Court's decision in *Austin v. United States,* — U.S. —, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), permitting a challenge to a civil forfeiture on Eighth Amendment grounds[9], does not, as Plaintiffs argue, provide a basis for either subject matter jurisdiction or waiver of sovereign immunity. Nor does *Austin* authorize judicial review of an administrative forfeiture decision.

### C. *Sovereign Immunity*

■ With respect to Plaintiffs' First Claim, the Government raises the issue of sovereign immunity as an additional bar to Plaintiffs' action. The doctrine of sovereign immunity holds that an individual may not sue the United States without its consent. *See, e.g., Doe v. Civiletti,* 635 F.2d 88, 93 (2d Cir.1980) (citations omitted). Furthermore, a waiver of sovereign immunity "cannot be implied but must be unequivocally expressed". *Id.* (quoting *United States v. Tes-*

8. If the Court did not dismiss Plaintiffs' First Claim on the merits, further judicial action with respect to Plaintiffs' other claims might have been appropriate. In this regard, the Court observes that Plaintiffs' Fourth Claim for relief—alleging liability under the FTCA—is expressly barred by that statute. *See* 28 U.S.C. § 2680(c) (prohibiting suit arising out of "the detention of any goods or merchandise by any officer of customs or excise or any other law-enforcement

officer"); *see also Sterling v. United States,* 749 F.Supp. 1202, 1212–13 (E.D.N.Y.1990).

9. The Court observes that Eighth Amendment challenges to civil forfeitures were recognized in the Second Circuit prior to *Austin. See, e.g., United States v. 38 Whalers Cove Drive,* 954 F.2d 29 (2d Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 55, 121 L.Ed.2d 24 (1992).

*tan,* 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976)).

Plaintiffs, however, argue that sovereign immunity has been waived by § 702 of the APA, which provides for judicial review of agency action. The Government counters that § 702 of the APA is limited by § 701 of that statute, which provides that the APA does not apply where there are other "statutes [that] preclude judicial review." 5 U.S.C. § 701(a)(1). The Government further maintains that because the customs forfeiture statute (19 U.S.C. §§ 1602–1619) affords judicial relief with respect to forfeitures, it is a statute that "precludes judicial review" within the meaning of § 701(a)(1)'s exception to the APA's jurisdiction. Additionally, the Government argues that Plaintiffs' challenge to the forfeiture falls within another exception to the APA's jurisdiction: under § 701(a)(2), the APA does not apply to the extent that "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2).

Despite the Government's argument to the contrary, courts have recognized that in the context of civil forfeitures, § 702 does provide a waiver of sovereign immunity for claims relating to the *adequacy of notice. See Sarit v. United States Drug Enforcement Admin.,* 987 F.2d 10, 17 (1st Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 241, 126 L.Ed.2d 195 (1993) ("courts have entertained challenges to the adequacy of notice, reasoning that the mechanism [for obtaining judicial relief provided in the forfeiture statute and regulations] is not available to a plaintiff who is not properly notified of the pending forfeiture") (citations omitted); *Taft,* 455 F.Supp. at 463 ("it is by now well-recognized that in the forfeiture context, section 702 provides a waiver for issues relating to the adequacy of notice") (citations omitted). The Court finds that the APA effectively waives sovereign immunity as to Plaintiffs' First Claim for relief with respect to inadequacy of notice.

■■■■ Although the APA provides a limited waiver of sovereign immunity, the APA is not an independent source of subject matter jurisdiction. *See Sterling v. United States,* 749 F.Supp. 1202, 1209 (E.D.N.Y. 1990) (citing *Califano v. Sanders,* 430 U.S. 99, 104–06, 97 S.Ct. 980, 983–85, 51 L.Ed.2d 192 (1977)). It is indisputable, however, that Plaintiffs' First Claim for relief raises a federal question pursuant to 28 U.S.C. § 1331. *See Taft,* 824 F.Supp. at 463; *Sterling,* 749 F.Supp. at 1209. This Court, therefore, may properly consider Plaintiffs' First Claim.

### D. *Summary Judgment*

Rule 56(c) of the Federal Rules of Civil Procedure provides for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

■■■■ On a motion for summary judgment, the moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The substantive law determines which facts are to be considered material. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In considering the moving party's motion for summary judgment, all ambiguities must be resolved and all inferences must be drawn in favor of the non-moving party. *See Gallo v. Prudential Residential Servs. Ltd. Partnership,* 22 F.3d 1219, 1223 (2d Cir.1994). If the moving party meets its burden, the burden then shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The non-moving party "may not rest upon the mere allegations or denials of the [non-moving] party's pleading, but the [non-moving] party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." *Id.* "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo,* 22 F.3d at 1224.

Plaintiffs' First Claim for relief alleges that the Government's failure to provide notice to all ten Plaintiffs constituted a denial of Plaintiffs' due process rights. The Supreme Court has held that when litigation is initiated to deprive individuals of their property, due process is satisfied by "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950).[10]

Where, as here, the Government has satisfied their obligations under Rule 56(c) with respect to showing an absence of a genuine issue of material fact concerning actual notice of the impending forfeiture to Plaintiffs, Plaintiffs may not rest upon the mere allegations of lack of actual notice in the Complaint but Plaintiffs must set forth specific facts showing that there is a genuine issue for trial with respect to actual notice or lack thereof. Fed.R.Civ.P. 56(c) and 56(e). The parties do not dispute the fact that the vehicle was registered only in the name of Amaral. Plaintiffs effectively established a condition in which any party, public or private, interested in asserting a claim or lien would be expected to direct any such notice to Amaral as the owner or designee of the owner. Further, while the Complaint alleges that no plaintiff other than Amaral received actual (or constructive) notice of the forfeiture, Plaintiffs have submitted no evidence to show that there is an issue of fact with respect to actual notice in response to the Government's motion. Moreover, Plaintiffs (1) by filing the Petition with the IRS, (2) by the statements made in the Petition, and (3) by their admissions in their Memorandum of Law, demonstrate that they had actual notice of the impending forfeiture.

The Court notes that the Government did not notify any of the Plaintiffs other than Amaral of the forfeiture[11] and that the Government does not dispute Plaintiffs' statements that the Government had knowledge of the other Plaintiffs and their addresses prior to May 15, 1992. Nevertheless, the Court is constrained to follow the decision in *Jeep Wrangler*, 972 F.2d 472, in which the Second Circuit held:

... appellant's argument that he was denied sufficient notice as to the second seizure is counter-intuitive to the facts as presented. If the claimant responded to the second seizure with a Notice of Claim, as he contends, he attests to the fact that he had received actual notice of the seizure.... the Court holds that in this instance, by virtue of [claimant's] admitted actual knowledge of the seizure, the lack of the latter publication notice did not arise to the level of a due process violation.

472 F.2d at 482 (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313–316, 70 S.Ct. 652, 657–59, 94 L.Ed. 865 (1950) (impliedly holding that actual notice satisfies demands of due process); *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 198–800, 103 S.Ct. 2706, 2711–2712, 77 L.Ed.2d 180 (1983) (same)); *cf. United States v. United States Currency Totalling $3,817.49*, 826 F.2d 785, 787 (8th Cir.1987) (citations omitted) ("Nevertheless, the Government's failure to give personal notice is not grounds for reversible error as the [claimants] do not show that they were prejudiced by this omission. The filing of their claim demonstrated that the [claimants] received actual notice of the complaint"); *United States v. All Right*, No. 90–2973 (MBM) 1991 WL 29209 at *2 (S.D.N.Y. Feb. 25, 1991) ("the claim by [the Montalvos] that the government was required to give them personal notice once learning of their purported interest in the defendant house is without

---

**10.** While it is black letter law that notice to the attorney is imputable to the client, *see, e.g., Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 92–93, 111 S.Ct. 453, 456, 112 L.Ed.2d 435 (1990) (citations omitted), it is unclear from the record before the Court when the notice of seizure was given to Newberg or precisely when Newberg began representing plaintiffs other than Amaral.

The Court, therefore, does not rely on the notice to Newberg in reaching its decision.

**11.** 19 U.S.C. § 1607(a) provides that "[w]ritten notice of seizure together with information on the applicable procedures shall be sent to each party who appears to have an interest in the seized article."

merit. The filing of claims demonstrated that the Montalvos received ACTUAL NOTICE of the complaint") (citations omitted) (emphasis in original).

The Court rejects Plaintiffs' attempt to limit *Jeep Wrangler* to defects concerning publication notice. The plain meaning of the above-quoted excerpt from *Jeep Wrangler* is that where actual notice of the impending forfeiture is found there is no due process violation. The Court also observes that the fact that the claimant's attorney in *Jeep Wrangler* was sent a Notice of Seizure was irrelevant to the Second Circuit's holding that where there is actual notice there is no due process violation.

The Court concludes that since Plaintiffs received actual notice of the seizure and pursued their administrative remedies by filing a petition for remission or mitigation of the forfeiture, the Government's failure to send Plaintiffs, other than Amaral, notice of the seizure, did not constitute a due process violation. Consequently, the Government's motion for summary judgment on Plaintiffs' First Claim is granted.

*CONCLUSION*

The Court has carefully considered all of the additional arguments raised by Plaintiffs in opposition to the Government's motion and has determined them to be without merit. For the reasons set forth above, the Government's motion to dismiss the Complaint for lack of subject matter jurisdiction is granted, except with respect to Plaintiffs' First Claim, alleging that notice of the seizure was inadequate, as to which summary judgment is granted.

The Clerk of the Court is directed to dismiss this action.

SO ORDERED.