**In re James Richard BROWNING and Nora Browning, d/b/a Farming, Debtors,**

**PEOPLES NATIONAL BANK OF McLEANSBORO, Plaintiff,**

**v.**

**Gibson KARNES, Trustee, and Boatmen's Bank of Benton, f/k/a Bank of Benton, Defendants.**

**Civ. No. 86–4184.**

United States District Court, S.D. Illinois, Benton Division.

Oct. 22, 1986.

Nancy K. Hall, Bonan, Bonan, & Hall, McLeansboro, Ill., for Peoples Nat. Bank of McLeansboro.

A. Courtney Cox, Hart & Hart, P.C., Benton, Ill., for defendants.

## OPINION

FOREMAN, Chief Judge:

This case is before the Court on appeal from a final order entered by the Bankruptcy Court for the Southern District of Illinois on April 3, 1986.

## FACTS

In January of 1983 appellant, Peoples National Bank of McLeansboro (PNB) loaned the sum of $106,000.00 to J.R. Browning and Nora Browning. In return, PNB took a security interest in the debtors' portion of all crops "growing or to be grown" on certain tracts of debtors' land. PNB filed a proper U.C.C. financing statement.

In April of 1984, the Brownings sought funds to produce their 1984 crop. The appellee, Bank of Benton, now Boatmen's Bank of Benton (Boatmen's), agreed to finance the crops so long as PNB would subordinate their lien on the crops to Boatmen's. On April 25, 1984, a letter was obtained by the Brownings from the attorney for PNB. The letter was shown to loan officers at Boatmen's. The content of the letter is as follows:

> As attorney for Peoples National Bank, McLeansboro, Illinois, this is to advise you that of this date, the Peoples National Bank claims no interest in the crops grown or growing on your farm in 1984. This is also to affirm that the Peoples National Bank does claim an interest in the crops grown in 1983 pursuant to your agreements with the bank."

After receipt of the letter, Boatmen's loaned the sum of $200,000.00 to the Brownings for purposes of 1984 crop production. In return, Boatmen's took a security interest in all crops "growing or hereafter planted." Boatmen's filed a proper U.C.C. financing statement.

The Brownings eventually entered bankruptcy owing on both the PNB and Boatmen's notes. In December, 1985, the Trustee in Bankruptcy filed a petition to compromise claims secured by crops produced by the Brownings in 1985. Michel Fertilizer Company, who financed the 1985 crops, was to receive $70,274.12 and $48,334.46 was to go to Boatmen's. PNB filed objections to the proposed compromise claiming an interest superior to Boatmen's in the 1985 crop.

On April 3, 1986, the Bankruptcy Court entered an order denying PNB's objections

to the proposed compromise. The bankruptcy judge found that the letter from PNB's attorney amounted to a subordination of PNB's lien to that of Boatmen's on all crops except the 1983 crops. PNB now appeals to this Court.

## DISCUSSION

■ The issue before the Court is simple. If a person has a valid security interest in crops planted on a debtor's land from 1983 through 1987, and he writes a letter subordinating his interest in 1984 crops and affirming his interest in 1983 crops, has he subordinated his interests in 1985, 1986 and 1987 crops? This Court sees the answer as being equally simple. As no mention was made of the later years' crops, no subordination could occur. The bankruptcy court did not find the answer so simple, so it is necessary to explore its reasoning.

The bankruptcy court ruled that the letter written by PNB's attorney should be construed as a subordination of all liens other than the lien on 1983 crops. The bankruptcy court also found that it was reasonable for Boatmen's to interpret the letter as a subordination of all of PNB's claims other than to the 1983 crops. It is somewhat unclear whether the bankruptcy court was using an estoppel theory, or ruling as a matter of law that the letter subordinated all other claims. In either case, the ruling should not stand.

The letter did not as a matter of law subordinate PNB's interests in crops after 1984. It is undisputed that under the Illinois version of the Uniform Commercial Code, PNB's security interest was valid for five years from the date of the filing of the financing statement.[1] There is nothing in the record which indicates that any of the parties involved in 1984 believed that the letter requested by Boatmen's and written by PNB's attorney dealt in any way with either party's interests in the future 1985 crops. There is no reference in the letter

to any rights or claims to any crops other than the 1983 and 1984 crops. There is simply no ambiguity involved. The letter did not address the 1985 crops.

■ The bankruptcy court found that no reservation of rights to the 1985, 1986 or 1987 crops was made in the PNB letter. This is true. However, this Court can find nothing in the law which demands that a reservation of rights be made. On the contrary, it is generally said that before a party is deemed to have waived or relinquished a right available to it under law, a clear and distinct manifestation of such an intent must be found. *American National Bank and Trust Co. v. K–Mart Corp.*, 717 F.2d 394, 398 (7th Cir.1983). Furthermore, a lien waiver may be partial in scope and limited by the expressed desires of the waiving party. *See* 9 Anderson, Uniform Commercial Code § 9–316:3, at 348 (3d ed. 1985). The Sixth Circuit aptly described this principal in a 1937 case.

> It is axiomatic that there may be a waiver of lien for one purpose and not for all purposes, and in respect to specified persons and not to others. Finally, there may be no waiver unless there is clearly an intent to waive, and by the same rationalizing, no unconditional waiver where the intent is merely to grant a conditional waiver, limited in time and purpose.

*Berger v. Kingsport Press, Inc.*, 89 F.2d 444, 446 (6th Cir.1937).

Appellee advances the theory of "expressio unis est exclusio alterius," the expression of one or more things of a class or kind implies the exclusion of another. It is appellee's contention that by reserving rights to the 1983 crops and not doing so for the 1985, 1986 or 1987 crops, PNB impliedly waived its claims to the later crops. However, this theory fails to account for the express subordination of the 1984 claim, and the lack of ambiguity in the letter. It could equally as well be said that

---

1. Although not relevant to the issue to be decided, it would be wise to point out that PNB's security interest was not perfected as to later crop years until the crops were planted. Perfection cannot occur until the interest attaches. Attachment does not occur until the debtor has an interest in the collateral. *See* Ill.Rev.Stat. ch. 26 ¶¶ 9–203, 9–302, 9–303 (1985).

the inclusion of a waiver to the 1984 crops implies a retention of rights in all other crops. Appellee counters by pointing to the express retention of interest in 1983 crops without mention of the later years. However, this counter-argument is the same on appellant's side. The 1984 waiver is without mention of later years. It would seem that the ancient rule of construction could be used by both sides lending only to a vicious circle with no apparent resolution. Most important though, is to remember that rules of construction have no application where a document is not ambiguous. As mentioned before, the Court sees no ambiguity in the letter.

If the bankruptcy court's ruling was based on an estoppel principal, it must fall as well. In order for estoppel to work, Boatmen's would need to show reasonable reliance on the letter being a waiver of PNB's claims to all later crops. *See* Restatement (Second) of Contracts § 90, comments b, c (1981). Any interpretation of the letter as a waiver or subordination of all claims to later year crops is unwarranted in view of the express language limiting PNB's waiver to 1984 crops.

The bankruptcy court's ruling that the letter from PNB's attorney amounted to a subordination of all claims other than to the 1983 crops is REVERSED. In its order the bankruptcy court chose not to address the question of whether Boatmen's is entitled to priority based on the debtor using proceeds from the 1984 crop to plant the 1985 crop. This question should be addressed by the bankruptcy court on remand. This case is ordered REMANDED for proceedings in accordance with this Court's findings.

IT IS SO ORDERED.