48 F.3d 1233
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Johnny L. SANDERS, Defendant-Appellant.
 No. 94-6219.
(D.C. No. CR-88-81-A)
 United States Court of Appeals, Tenth Circuit.
 Feb. 28, 1995.
 
 Before MOORE, BARRETT, and EBEL, Circuit Judges.
 
 
 1
 ORDER AND JUDGMENTS*
 
 
 2
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 3
 Defendant-appellant Johnny L. Sanders appeals pro se from the district court's partial denial of his motion for return of seized property pursuant to Fed.R.Crim.P. 41(e). We affirm in part, but remand for further proceedings regarding certain property that the district court's order failed to address.
 
 
 4
 Sanders is a federal prisoner sentenced by the district court in January 1990 to thirty years' imprisonment for multiple drug-related offenses. He filed his Rule 41(e) motion in October 1993 seeking return of vehicles, jewelry, and cash seized by federal and state authorities in conjunction with their investigation of his drug activities. Specifically, he asked for the return of:
 
 
 5
 1. Jewelry valued at about $15,000 taken from Sanders' safety deposit box in an Oklahoma City bank;
 
 
 6
 2. Five vehicles taken from Sanders' business and residence and from an associate;
 
 
 7
 3. Approximately $24,000 in cash and $50,000 worth of the $80,000 in jewelry seized from Sanders' residence; and
 
 
 8
 4. The remaining $30,000 worth of jewelry seized from Sanders' residence.
 
 
 9
 The government did not contest the return of the jewelry seized from the safety deposit box, and the district court ordered the return of that jewelry.[1] It denied the motion for return of the remaining property.
 
 
 10
 The district court did not order return of the vehicles because it concluded there was no evidence the vehicles were ever in federal custody. Moreover, the vehicles have already been forfeited by default pursuant to state court proceedings, and the district court held that it was bound to grant full faith and credit to the state court's judgments. See Ryan v. City of Shawnee, 13 F.3d 345, 347 (10th Cir.1993).
 
 
 11
 On appeal, Sanders contends that because the state authorities were on his property pursuant to federal search warrants, their seizure of his vehicles was "federalized" and only the federal government had jurisdiction over the vehicles. We disagree. Sanders provides no evidence indicating federal authorities ever had custody over his vehicles. State authorities apparently seized the vehicles at the request of a state prosecuting attorney pursuant to a state drug forfeiture statute, and subjected them to state forfeiture proceedings in a state court. See Okla. Stat. tit. 63, Sec. 2-504. Sanders does not challenge those proceedings. The district court correctlye denied return of the vehicles.
 
 
 12
 The government subjected the cash and $50,000 worth of the jewelry seized from Sanders' residence to administrative forfeiture proceedings in early 1988, shortly after the property was seized. See 19 U.S.C. Secs. 1607-1609; 21 C.F.R. Sec. 1316.77. The government sent notices of its intended forfeitures to Sanders' last known address and also provided notice through publication. Sanders failed to respond to these notices or to assert a timely claim to this property. The district court denied return of the property because it concluded that the government's forfeiture procedures were adequate and that Sanders lost any interest he had in this property by his default. It also found that because Sanders was a fugitive during the forfeiture proceedings, the fugitive disentitlement doctrine barred him from challenging those proceedings. See United States v. Timbers Preserve, 999 F.2d 452, 453 (10th Cir. 1993) (applying fugitive disentitlement doctrine to civil forfeitures).
 
 
 13
 Sanders contends on appeal that the notices the government sent to his last known address were invalid essentially because the government knew he was a fugitive and not at that address. He also contends that the fugitive disentitlement doctrine should not apply to civil forfeitures. Neither of these contentions have merit. The district court correctly denied Sanders' request for return of the cash and $50,000 worth of jewelry.
 
 
 14
 That brings us to the final category of property and the one that causes us some concern--the remaining $30,000 in jewelry seized from Sanders' residence. Though the district court noted that Sanders alleged the government seized a total of $80,000 in jewelry from his residence (and the government does not dispute this allegation), it specifically addressed only the $50,000 worth that was forfeited. The record does not indicate why the government did not initiate forfeiture proceedings against all $80,000 worth of jewelry. But the record does indicate that the government no longer has the $30,000 worth of jewelry because it gave it away, specifically. to Sanders' ex-wife Renee Phillips Sanders pursuant to her petition for remission.[2] See 19 U.S.C. Sec. 1618, 21 C.F.R. Secs. 1316.79-.81. The government fails to explain, however, how its surrender of the jewelry to Renee deprived Sanders of any interest he had in the jewelry or otherwise bars his request for its return.
 
 
 15
 Sanders had a property interest in this jewelry. He was in possession of it when the government seized it. "Bare possession is enough to establish some form of interest." United States v. Estep, 760 F.2d 1060, 1064 (10th Cir. 1985), and is prima facie evidence of Sanders' right to return of the jewelry, Id.; United States v. Maez, 915 F.2d 1466, 1468 (10th Cir. 1990), cert. denied, 498 U.S. 1104 (1991). Moreover, several months before the government remitted the jewelry to Renee, Sanders testified at his trial in the same district court that he owned the jewelry. And he presented additional evidence of his ownership of the jewelry in support of his Rule 41(e) motion. See R. Supp. Vol. I, Doc. 1289, Ex. A.
 
 
 16
 The government could not permanently deprive Sanders of his interest in the jewelry without according him due process. However, there is no indication here that Sanders received due process. The government explained to the district court that Renee "was notified of the proposed forfeiture of certain jewelry. Upon proof of her ownership and legitimate acquisition of that jewelry, the DEA returned the jewelry to her." R. Supp. Vol. I, Doc. 1285 at 3 n.1.[3] The government did not give Sanders the same opportunity to claim the jewelry. He was in custody at the time Renee petitioned for remission. Yet he was not given notice of this "proposed forfeiture," either directly or otherwise, nor was he allowed to assert his claim to the jewelry. See 21 C.F.R. Secs. 1316.75, 1316.76.
 
 
 17
 The government insists that its remission of the jewelry to Renee was proper. It then contends that a remission is an act of executive grace, not right, and that its discretionary decision to remit is reviewable only for compliance with unidentified procedural safeguards. But the government misses the point. Judicial review of a remission is not the issue; whether Sanders received due process is. Though the government's argument is unclear, it appears to confuse remissions with forfeiture.
 
 
 18
 Proper forfeiture proceedings provide due process. See United States v. James Daniel Good Real Property, 114 S. Ct. 492, 498-504 (1993) (discussing due process requirements applicable to forfeitures). They can extinguish a claimant's interests in property and defeat a motion for return of seized property. See, e.g., United States v. Giraldo, No. 94-1454, 1995 WL 13443, at * 3 (1st. Cir. Jan. 19, 1995). In fact, the government used forfeiture proceedings in this case to extinguish any interest Sanders may have had in the cash and $50,000 in jewelry seized from his residence.
 
 
 19
 In contrast, remission proceedings do not have to accord claimants due process. United States v. Von Neumann, 474 U.S. 242, 249-51 (1986). In distinguishing between remission and forfeiture proceedings, the Supreme Court noted that remission proceedings are simple, informal, preliminary proceedings to allow claimants to request quick return of seized property:
 
 
 20
 The remission statute [19 U.S.C. Sec. 1618] simply grants the secretary the discretion not to pursue a complete forfeiture despite the government's entitlement to one. Remission proceedings supply both the Government and the claimant a way to resolve a dispute informally rather than in judicial forfeiture proceedings. But remission proceedings are not necessary to a forfeiture determination, and therefore are not constitutionally required.
 
 
 21
 Von Neumann, 474 U.S. at 250. Where remission proceedings do not provide claimants with due process, which we promise to be the rule, they cannot extinguish the claimants' interests in property.[4] DP1That is the situation we have here. The government's remission of the jewelry to Renee did not provide Sanders due process. The remission therefore did not extinguish Sanders' property interest in the jewelry and does not preclude his Rule 41(e) claim. See Giraldo, 1995 WL 13443, at * 3 (remanding motion for return of property where claimant alleged forfeiture proceedings violated due process); United States v. Woodall, 12 F.3d 791m 794-95 (8th Cir. 1993) (same). The record is inadequate for us to determine on appeal Whether Sanders is entitled to return of the $30,000 worth of jewelry. The district court will therefore have to consider this claim on remand.
 
 
 22
 We note that there is an element of mootness to Sanders' claim because he seeks return of property that the government no longer possesses. We have not addressed this situation before, but other circuits in analogous situations have not found such claims to be moot. Motions for return of seized property are equitable actions, Floyd, 860 F/2d 1003, and the government did not challenge the district court's exercise of its equitable jurisdiction to entertain Sanders' motion. " 'Where a court of equity assumes jurisdiction because the complaint requires equitable relief, the court has power to award damages incident to the complaint.' " Mora v. United States, 955 F.2d 156, 159 (2d Cir. 1992) (quoting United States v. Martinson, 809 F.2d 1364, 1367-68 (9th Cir. 1987)). Mora and Martinson both hold that a court may award damages when the government no longer possesses property that it seized and should have returned pursuant to Rule 41(e). See also United States v. Francis, 646 F.2d 251m 262-63 (6th Cir.), cert. denied, 454 U.S. 1082 (1981). We agree with these decisions. The district court thus may award damages if it determines that Sanders is entitled to return of seized property the government no longer has.
 
 
 23
 The judgment fo the United States District Court for the Western District of Oklahoma is AFFIRMED IN PART, REVERSED IN PART, and REMAMNDED for proceedings consistent with this order and judgment.
 
 
 
 *
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [1]
 On appeal, Sanders asks that the district court retain jurisdiction over the return of this jewelry to ensure it is actually returned. He may raise this issue with the district court on remand
 
 
 [2]
 Because of some confusion in the district court, particularly on the part of the government, we emphasize that we are referring to Sanders' ex-wife, Renee Phillips Sanders, as opposed to his current wife and co-defendant, Renee Armstrong Sanders
 
 
 [3]
 The evidence of Renee's ownership of the jewelry is marginal at best and contains no indication it was "lawfully purchased," as the government contends. See attachments to R. Supp. Vol. I, Doc. 1288
 
 
 [4]
 The cases the government cites for limited judicial review of remission decisions do not raise due process issues and thus are inapposite. They do, however, implicitly acknowledge the due process requirements of notice and an opportunity to be heard provided by related forfeiture proceedings. See Scarabin v. DEA, 919 F.2d 337, 338 (5th Cir. 1990) (noting that government provided Notice of Seizure to claimant outlining alternatives available for contesting forfeiture); In Re Sixty Seven Thousand Four Hundred Seventy Dollars, 901 F.2d 1540, 1545 (11th Cir. 1990) (same); see also Floyd v. United States, 860 F.2d 999, 1003-04 (10th Cir. 1988) (discussing notice and assertion of claims in forfeiture proceedings); 19 U.S.C. Sec. 1607(a) (where government proposes to forfeit and dispose of seized property, written notice and information on procedures for challenging forfeiture "shall be sent to each party who appears to have an interest in the seized article")