**Willie E. BURKE, Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF JUSTICE, DRUG ENFORCEMENT AGENCY, Defendant.**

**Civil Action No. 95–D–642–N.**

United States District Court,
M.D. Alabama,
Northern Division.

June 24, 1997.

---

Willie E. Burke, Jr., pro se.

Redding Pitt, U.S. Atty., John T. Harmon, Asst. U.S. Atty., Montgomery, AL, for defendant.

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

Before the court is Defendant United States of America's motion for summary judgment filed on May 23, 1997.[1] Plaintiff Willie E. Burke ("Burke") filed a response on June 9, 1997. After careful consideration of the arguments of counsel, the relevant case law, and the record as a whole, the court finds that Defendant's motion for summary judgment is due to be denied and that judgment in this matter is due to be entered in favor of Plaintiff.

### Factual Background

This action arises from the seizure of a 1993 Chevrolet Silverado pick-up truck ("Truck") by the Drug Enforcement Agency ("DEA").[2] The Truck was seized on or about February 15, 1994, as the result of the arrest and prosecution of Terry Mitchell ("Mitchell") for a drug-related offense. Mitchell was subsequently convicted and imprisoned. Mitchell allegedly purchased the Truck from Burke on or about July 16, 1993. Burke claims that Mitchell paid only a portion of the total price of the Truck and that he maintained a security interest in the Truck at the time it was seized by the DEA. In pursuit of that interest Burke filed a lienholder petition on February 9, 1995,[3] seeking recovery of his

---

1. Plaintiff's complaint names the United States Department of Justice, Drug Enforcement Administration as the Defendant in this action. For ease of discussion, the court refers to the United States as the Defendant throughout this memorandum opinion.

2. The Truck's serial number or VIN is 1GCHC39N2PE24800.

3. While Burke's response to Defendant's motion to dismiss claims that the Lienholder Petition was filed on February 9, 1994, the copy of the Lienholder Petition submitted to the court is dated February 9, 1995. Additionally, the decla-

interest in the vehicle.[4]

In a letter dated April 10, 1995, Susan M. Carracino ("Carracino"), a Senior Attorney for the DEA, informed Burke that his Lienholder Petition had been approved and that the forfeiture would be completely remitted without cost or penalty to Burke. Burke was directed to reclaim the Truck by contacting the United States Marshall Service ("USMS"). Burke then allegedly took the letter to the secure facility at Gunter Park in Montgomery, Alabama, in an effort to reclaim the Truck. Burke alleges that he presented the letter to DEA Agent Marshall Simmons who told Burke that he had not yet received a copy of the remission letter. Burke did not receive possession of the Truck during this visit to the secure facility.

Burke alleges that this visit to the secure facility touched off an effort by the DEA to reverse the earlier remission decision. Burke claims that DEA agents and officials from the IRS began to harass him in an effort to prevent him from retrieving the Truck. On May 18, 1995, William J. Snider ("Snider"), DEA Forfeiture Counsel, wrote Burke to inform him that DEA's complete remission decision of April 10, 1995, was temporarily rescinded pending investigation of allegations that Burke's documentation had been falsified. On March 22, 1996, Carracino wrote to Burke to inform him that his Lienholder Petition had been denied following a complete investigation. Carracino informed Burke of the "facts" supporting the DEA's decision: (1) the Alabama Department of Revenue had no record of either Burke's lien or vehicle registration on the Truck's Certificate of Title, (2) a Forensic Document Examiner determined that the

sales contract provided by Burke shows evidence of tampering including evidence that two different signatures were made by the same person, and (3) Burke's refusal to cooperate in an interview scheduled for April 18, 1995. Burke wrote a letter dated April 5, 1996, requesting reconsideration of this denial. However, Snider wrote Burke on October 8, 1996, and explained that Burke was entitled to only one reconsideration of the DEA's denial of Burke's Lienholder Petition in accordance with the provisions of 28 C.F.R. § 9.4(i). In this same letter, Snider wrote that the DEA had decided to deny Burke's request for reconsideration and that the decision on Burke's Lienholder Petition was now final.

On May 15, 1995, Burke filed a complaint requesting the court to order the DEA to release the Truck, pay conversion damages, and enjoin any further investigations directed at him. Defendant filed a motion to dismiss Plaintiff's complaint on September 13, 1995. In a Memorandum Opinion and order entered April 9, 1997, the court granted in part and denied in part Defendant's motion to dismiss. The court found that Burke's claims dealing with the criminal investigation targeted against him were due to be dismissed. The court also found that it had limited jurisdiction to review Defendant's actions regarding the Truck's forfeiture. *See Matter of $67,470.00*, 901 F.2d 1540, 1545 (11th Cir.1990).[5] However, the court found that the portion of Defendant's motion to dismiss dealing with Burke's request for the return of the Truck was due to be denied.[6] The court based this finding on the DEA's reversal of its earlier decision granting complete remission of the Truck's forfeiture.

ration of William J. Snider, Forfeiture Counsel for the DEA, indicates that the DEA received Burke's Lienholder Petition in February 1995. While the date remains in dispute, the court adopts the date appearing on the Lienholder Petition for purposes of discussion.

4. According to Burke's documentation and the Lienholder Petition, the Truck's cash selling price was $31,266.50 and Mitchell had paid $9,266.50 of the total price, meaning that Burke's interest was approximately $22,000.00.

5. The court continues to rely on this decision and related authority as the basis for its jurisdiction

in this matter. As will be shown subsequently, the court finds that its jurisdiction over this matter includes areas not discussed in the Memorandum Opinion and Order of April 9, 1997. *See infra* pp. 691–692.

6. Burke's conversion claim is also due to be dismissed. While the court's order of April 9, 1997, did not specifically dismiss Burke's conversion claim, such a finding was implicit within the court's reasoning. To avoid any chance of confusion, the court now finds that Burke's claims based upon conversion are due to be dismissed.

## SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *see also Barfield v. Brierton,* 883 F.2d 923, 933 (11th Cir.1989).

The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions in the file, together with affidavits, if any,'" that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553.

Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *see also* Fed.R.Civ.P. 56(e).

In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356; *see also Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510.

## DISCUSSION

The Defendant continues to insist that this court lacks jurisdiction over this matter. This decision, however, articulates two separate bases for asserting jurisdiction in this matter: (1) the court may review whether the Defendant violated its regulations when it rescinded its remission grant and (2) the court may assert jurisdiction where a lienholder petitioner's due process rights have been violated.

### 1. *Failure To Follow Regulations*

 Those individuals contesting forfeitures have a choice to proceed either by seeking a judicial determination of the forfeiture or by allowing the item to be administratively forfeited and then seeking administrative review of the forfeiture through a petition for remission or mitigation. 19 U.S.C.A. §§ 1608, 1609, 1613 (West Supp. 1997); *see also Ezennwa v. United States,* No. 93–CV–2789, 1997 WL 63318, at *1–*3 (E.D.N.Y. Feb.12, 1997) (describing the claimant's options for contesting forfeiture proceedings). In order to secure judicial

review of a forfeiture action, an interested party must file a notice of interest in the seized item as well as the "giving of a bond to the United States in the penal sum of $5,000.00 or 10 percent of the value of the claimed property." 19 U.S.C.A. § 1608 (West Supp.1997). If no "such claim is filed or bond given within twenty days," then the item shall be declared forfeited and shall be sold at a public auction. 19 U.S.C.A. § 1609 (West Supp.1997).

■ However, even though the item is considered to have been administratively forfeited, an interested person may seek administrative review of the forfeiture by petitioning the Secretary of the Treasury for remission or mitigation of the "fine, penalty, or forfeiture" prior to the sale of the item. 19 U.S.C.A. § 1618 (West Supp.1997); *see also* 28 C.F.R. § 9.4(a)(1996) (directing that petitions for remission or mitigation of administrative forfeitures shall be directed to the Administrator of the DEA). If the petition for mitigation or remission is denied, the petitioner has ten days in which to submit a single request for reconsideration of the denial. 28 C.F.R. § 9.4(i) (1996).

■ In this action, Burke did not submit a bond and made no effort to seek judicial review of the Truck's forfeiture. Instead, he filed a Lienholder Petition in an effort to secure a remission or mitigation of the Truck's forfeiture. Therefore, Burke waived his right to seek judicial review of this action and any review this court may grant flows from Burke's petition for remission or mitigation. *See* 19 U.S.C.A. §§ 1608–09; *see also United States v. One 1987 Jeep*, 972 F.2d 472, 480 (2nd Cir.1992); *Matter of $67,-470.00*, 901 F.2d 1540, 1545 (11th Cir.1990) ("It is inappropriate for a court to exercise jurisdiction to review the merits of a forfeiture action when the petitioner elected to forego the procedures for pursuing an adequate remedy at state law."). A court's ability to review remission or mitigation petition proceedings is very limited since "[t]he remission of forfeitures is neither a right nor a privilege, but an act of grace." *Matter of $ 67,470.00*, 901 F.2d at 1543 (citing *United States v. One 1961 Cadillac*, 337 F.2d 730, 733 (6th Cir.1964); *ARCA Airlines, Ltda. v.*

*U. S. Customs Serv.*, 726 F.Supp. 827, 830 (S.D.Fla.1989), *aff'd*, 945 F.2d 413 (11th Cir. 1991); *LaChance v. Drug Enforcement Admin.*, 672 F.Supp. 76, 79 (E.D.N.Y.1987)). As such, federal common law consistently holds that federal courts "lack jurisdiction to review the merits of a forfeiture decision that the Secretary has reached in the exercise of his discretion." *Id.* (citations omitted).

■ However, federal courts do have jurisdiction "when the agency does not even consider a request that it exercise its discretion." *Matter of $67,470.00*, 901 F.2d at 1544; *see also One 1987 Jeep*, 972 F.2d at 480. In such cases the petitioner must specifically claim that the agency has taken no action on the petitioner's request for remission or mitigation. *Id.* Courts may also exercise jurisdiction where an agency violates its own regulations for dealing with administrative forfeitures. *Sammons v. Taylor*, 967 F.2d 1533, 1548–49 (11th Cir.1992) (holding that dispute over the Federal Bureau of Investigation's adherence to its own forfeiture regulations was sufficient to allow the court to exercise jurisdiction over the agency's administrative forfeiture decision).

In its April 9, 1997, *Memorandum Opinion and Order*, 968 F.Supp. 678, the court expressed its concern over the "complete reversal of an agency's decision within a month of a supposedly final decision" by stating that this change of heart "strikes the court as unnatural" and that it "seems to run counter to traditional notions of finality in agency decisions." Memo. Op. and Order at 683. Based upon this observation, the court found that this reversal may have constituted a violation of the DEA's procedures for handling remission claims. As part of this denial, the court informed the parties that it was uncertain over DEA's remission regulations and directed that discovery be reopened so that the parties could properly brief this issue. In its motion for summary judgment, the Defendant explains that the DEA's forfeiture authority is contained in sections 9.4 and 9.6 of Title 28 of the Code of Federal Regulations (1996). Not surprisingly, the Defendant insists that the DEA did not vio-

late any of the regulations set forth in these sections of the C.F.R.

According to the Defendant, 28 C.F.R. § 9.5 sets forth the criteria for the remission and mitigation process. The Defendant focuses its explanation of the remission and mitigation process on the requirement that a petitioner must demonstrate a secured interest in the seized item. *See* 28 C.F.R. §§ 9.5(b)(1), 9.4(c)(2). The Defendant also points to a decision from the Middle District of Alabama finding that a security interest in an item of property is not valid if the alleged interest holder does not record or perfect his or her interest in accordance with state law. *See U.S. v. One 1993 Chevrolet Silverado Pickup Truck,* Civil Action No. 95–A–318–N (M.D.Ala.1996). Finally, the Defendant reiterates its claim that Burke failed to properly record the Truck's title, committed other irregularities in regard to the Truck, and failed to answer questions or provide further documentation once these errors were discovered.

While the Defendant describes in detail the requirements for establishing a security interest in a vehicle and Burke's alleged failures, it does little to answer the court's concerns over the DEA's about-face regarding Burke's Lienholder Petition. The Defendant does argue that the DEA was well within its discretion to rescind Burke's allegedly improvidently-granted petition. The Defendant argues that the DEA must be given the discretion to rescind improperly granted petitions because finding otherwise would delay the "huge number of lienholder petitions" that the DEA processes each year "until DEA can be assured that the business records submitted are correct." Br. Supp. Mot. Summ. J. at 9.

While the Defendant argues that this case is about Burke's failure to properly establish his security interest, the court finds that the pertinent issue is whether the DEA complied with its regulations when it rescinded the granting of Burke's Lienholder Petition. Despite the court's warning at the motion to dismiss stage, the Defendant does not point to any DEA regulations establishing procedures for rescinding a Lienholder Petition where remission has been granted. The court can only assume that no such regulations exist. Therefore, the issue before the court is whether the DEA's taking of an action not mentioned by its regulations violates those same regulations. The court finds that in this case it does.

■ There is no question but that agencies must be provided discretion in carrying out the various duties assigned to them. *E.g., National R.R. Passenger Corp. v. Boston and Me. Corp.,* 503 U.S. 407, 417, 112 S.Ct. 1394, 1401, 118 L.Ed.2d 52 (1992) (citing *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)). This principle has been clearly established as it relates to an agency's ability to interpret a statute which it administers. *E.g., id.* When dealing with forfeiture actions, the DEA must likewise be allowed to exercise discretion to implement its assigned duties. While the DEA forfeiture regulations provide a comprehensive scheme for making forfeiture decisions, they do not establish every single procedure which must be followed. For example, 28 C.F.R. § 9.4(f), (g) (1996) provides that upon receipt of a lienholder petition, the Administrator of the DEA or his/her designee shall rule upon the petition and that notice of the disposition of the petition "shall be mailed to petitioner or petitioner's attorney, and to the U.S. Marshals Service." The regulations do not describe the class of postage which must used or whether return receipt mailing is required. These matters are properly left within the discretion of the Administrator of the DEA.

■ However, it is another matter to allow the DEA to possess unbridled discretion to take actions outside the procedures established by the agency's regulations. There are no regulations describing the procedures for rescinding a grant of remission. While the DEA may argue that an absence of regulations does nothing to prohibit it from rescinding a grant of a lienholder petition, the statutory construction principle of *expressio unis est exclusio alterius* suggests otherwise. This principle stands for the concept that "[w]hen a statute limits a thing to be done in a particular mode, it includes the negative of any other mode." *National R.R. Passenger Corp. v. National Ass'n of R.R. Passengers,* 414 U.S. 453, 458, 94 S.Ct. 690, 693, 38 L.Ed.2d 646 (1974); *see also In re Browning,*

66 B.R. 79, 81 (S.D.Ill.1986) (noting that theory of *expressio unis est exclusio alterius* means that "the expression of one or more things of a class or kind implies the exclusion of another"); *Guaranty Mortgage Co. v. Z.I.D. Associates, Inc.*, 506 F.Supp. 101, 104 (S.D.N.Y.1980) (finding that the doctrine of *expressio unis est exclusio alterius* means that a section of the National Banking Act "must be read to preclude what it does not expressly sanction"). The preclusive effect of the doctrine can be overcome where legislative history demonstrates that a contrary interpretation of the provision is appropriate. *See National R.R. Passenger Corp.*, 414 U.S. at 458, 94 S.Ct. at 693; *Guaranty Mortgage Co.*, 506 F.Supp. at 104–05.

The forfeiture regulations describe the remission and mitigation procedure as a series of simple steps.[7] First, the interested party must petition for mitigation or remission following the applicable regulations. 28 C.F.R. § 9.4(a), (c). Next, the Administrator of the DEA or his/her designee must make a decision on the petition based upon a recommendation of the DEA office of Chief Counsel. 28 C.F.R. § 9.4(e), (f). The DEA must then mail notice of its decision to the interested party or the party's attorney. 28 C.F.R. § 9.4(h). If the petition has been granted, the notification must include a description of the required procedures for obtaining the granted relief. *Id.* However, if the petition was denied, the interested party may file a single request for reconsideration within ten days. 28 C.F.R. § 9.4(i). This request must be based upon recently developed evidence or evidence that was not previously considered during the process. *Id.*

One matter this process does not include is a procedure for rescinding grants of remission or mitigation. While other portions of the regulations provide general guidance on the terms and conditions of remission, they do not mention or contemplate recision of such a decision. *See* 28 C.F.R. § 9.7. The section coming closest to imposing conditions on grants of remission is 28 C.F.R. § 9.7,

which requires lienholders to comply with certain conditions to regain possession of their property. However, even if the lienholder fails to abide by these conditions, the lienholder will still receive a portion of the forfeiture sales proceeds. 28 C.F.R. § 9.7(b)(3). Additionally, this section permits "[t]he determining official [to] impose such other terms and conditions as may be appropriate." 28 C.F.R. § 9.7(f).

However, the court finds that this grant of discretion does not allow the determining official to develop an unwritten policy for rescinding grants of remission. Section 9.7 provides methods for protecting the interests of owners and lienholders once remission has been granted while simultaneously protecting the federal government's interests. Pursuant to this section, owners and lienholders must follow certain guidelines which provide a mechanism for the federal government to retrieve the costs of the forfeiture from owners, ensure that lienholders receive only the amount of their equity, and ensure that the government is released from any liability as a condition of the remission. While the section seeks to protect the federal government's interests, it does not mention either explicitly or implicitly that a remission may be set aside once it has been granted, leaving the lienholder or owner with no recovery. The court finds pursuant to the doctrine of *expressio unis est exclusion alterius* that section 9.7 limits governmental protection measures available to the DEA to the measures specifically enumerated in § 9.7 and that the DEA is precluded from utilizing other protective measures such as an unwritten procedure for rescinding grants of remission. Therefore, the court finds that the DEA's decision to rescind its remission grant to Burke violates its own rules and that the Truck should be returned to Burke.

*2. Failure To Afford Due Process*

 Not only do the DEA's actions in this matter go beyond the applicable regula-

---

7. Remission is the "release or extinguishment of a debt" and is the common law term for "the act by which a forfeiture or penalty is forgiven." *Black's Law Dictionary* 1294 (6th ed.1990). Mitigation, on the other hand, is "[a]lleviation, re-

duction, abatement or diminution of a penalty or punishment imposed by law." Id. at 1002. The DEA mitigation and forfeiture regulations adopt these common law definitions. *See* 28 C.F.R. § 9.5(b), (c).

tions which have been emplaced to guide its actions with respect to remission procedures, but these actions also violate Burke's right to due process. Even though district courts lack authority to review the merits of administrative forfeiture decisions, they can review "collateral due process attacks." *Giraldo,* 45 F.3d at 511; *see also Schinnell,* 80 F.3d at 1069 ("Once the administrative forfeiture was completed, the district court lacked jurisdiction to review the forfeiture except for failure to comply with procedural requirements or to comport with due process."). District courts' power to review such attacks provides "a fundamental safeguard against governmental agencies and public officials who wrongfully seize or hold a citizen's property." *Woodall,* 12 F.3d at 793 (citations omitted). In a 1990 decision, the Eleventh Circuit declined to hold that the establishment of a remission procedure creates property rights for affected individuals. *Matter of $67,470.00,* 901 F.2d 1540, 1546 (11th Cir.1990) (citing the Supreme Court's refusal to decide this issue in *United States v. Von Neumann,* 474 U.S. 242, 106 S.Ct. 610, 88 L.Ed.2d 587 (1986)). The Eleventh Circuit's reluctance to make a specific holding notwithstanding, several circuit courts have determined that administrative forfeiture proceedings are subject to due process attacks. *See United States v. Schinnell,* 80 F.3d 1064, 1069 (5th Cir.1996); *United States v. Sanders,* No. 94–6219, 1995 WL 94666, at *2–3 (10th Cir. February 28, 1995) (unpublished disposition); *United States v. Giraldo,* 45 F.3d 509, 511 (1st Cir.1995); *United States v. Woodall,* 12 F.3d 791, 793 (8th Cir.1993); *see also Dawson v. Drug Enforcement Admin.,* 927 F.Supp. 748, 752 (S.D.N.Y.1996).

▮ Most of these circuit courts have dealt with allegations of due process violations concerning the initiation of forfeiture proceedings, *e.g., Giraldo,* 45 F.3d at 511–12; *Woodall,* 12 F.3d at 792, 794, but the Tenth Circuit Court of Appeals has specifically extended this power to the remission decision process, *Sanders,* 1995 WL 94666, at *2–3. In an unpublished opinion, the Tenth Circuit rejected the government's argument that the court lacked jurisdiction to ensure that remission proceedings are reviewable in terms of due process. *Id.* at *2. The *Sanders* court

insisted that "[j]udicial review of a remission is not the issue; whether [the person filing the remission petition] received due process is." *Id.* In holding the remission proceedings invalid, the *Sanders* court stated that "[w]here remission proceedings do not provide claimants with due process, which we promise to be the rule, they cannot extinguish the claimants' interests in property." *Id.* at *3 (holding that remission proceeding which resulted in return of jewelry to convicted individual's ex-wife without affording convicted individual the opportunity to contest the forfeiture or petition for remission violated convicted individual's due process rights).

Moreover, while most of the decisions reviewing forfeiture and remission due process challenges have focused on the improper or inadequate notice to claimants of pending proceedings, *e.g., Sanders,* 1995 WL 94666, at *3 (failure to provide incarcerated claimant notice of forfeiture or remission proceedings); *Giraldo,* 45 F.3d at 510–12 (failure to provide incarcerated claimant notice of forfeiture proceedings), other types of failures may also offend a claimant's due process rights. When faced with agencies making decisions involving property rights, several courts have ruled that agencies following unwritten policies or procedures violate the due process rights of those who must come before the agency. *See White v. Roughton,* 530 F.2d 750, 753–54 (7th Cir.1976) (holding that determining eligibility for general assistance program based upon unwritten standards vests "virtually unfettered discretion" in the decision makers and "is clearly violative of due process"); *Holmes v. New York City Hous. Auth.,* 398 F.2d 262, 265 (2nd Cir.1968) (stating that "due process requires that selections among applicants be made in accordance with 'ascertainable standards'") (citing *Hornsby v. Allen,* 326 F.2d 605, 612 (5th Cir.1964)). "It hardly need be said that the existence of an absolute and uncontrolled discretion in an agency of government vested with the administration of a vast program, such as public housing, would be an intolerable invitation to abuse." *Holmes,* 398 F.2d at 265 (citing *Hornsby,* 326 F.2d at 609–10). While vesting such discretion in an agency

may prevent "bureaucratic paralysis," due process "requires that we be ruled by law and not by fiat." *Baker–Chaput v. Cammett,* 406 F.Supp. 1134, 1140 (D.N.H.1976).

To allow the DEA to administer a remission recision scheme using unwritten standards leads to rule by decree and not by law. Without some reasonably ascertainable standards, the DEA is free to rescind remission and mitigation decisions in whatever fashion and on whatever timetable it may desire.[8] The court cannot countenance such activity. The DEA must operate within its promulgated regulations and if it cannot then it must see to it that additional regulations are written to provide standards for needed activities.[9] Otherwise, the forfeiture program threatens the basic liberties to which each citizen is entitled. Therefore, the court finds that the DEA's reliance on unwritten regulations to rescind its grant of remission to Burke violates Burke's due process rights and is invalid. Additionally, the court finds that the Truck should be returned to Burke. *See Schinnell,* 80 F.3d at 1069 (explaining that the proper remedy in successful collateral attacks on forfeiture proceedings is "to set aside the forfeiture"); *Giraldo,* 45 F.3d at 512 (requiring district court to determine on remand if notice met due process requirements and if not to "set aside the declaration of forfeiture and order the Customs Service to return" the forfeited property).

Accordingly, the court finds that the Defendant's motion for summary judgment is due to be denied and that judgment is due to be entered on behalf of Burke to the extent that the original grant of remission should be reinstated and the Truck returned to Burke. Judgment is to be entered on behalf of Burke because the DEA violated its own regulations in rescinding its grant of remission and, alternatively, because DEA based this recision

upon an unwritten policy which violated Burke's due process rights. The court further finds that the DEA shall return the Truck to Burke and that Burke is entitled to no further relief.[10]

### CONCLUSION

Accordingly, it is CONSIDERED and ORDERED that Defendant's motion for summary judgment be and the same is hereby DENIED. The court finds that judgment is due to be entered on behalf of the Plaintiff. A judgment in accordance with this Memorandum Opinion and Order will be entered separately.

---

8. Under the DEA's necessary discretion argument, there is nothing to prevent the DEA from rescinding its grant of remission one or two years after the petition was originally granted. This ability to reverse seemingly final decisions long after they have been made flies in the face of the important notion of finality. Just as with judicial proceedings, individuals involved in an administrative proceedings must be able to look to adjudications as the final declaration on the matter.

9. A regulation allowing recision of remission decisions later discovered to be based on fraudulent documents and/or misrepresentations would seemingly cure DEA's problem in this matter.

10. Nothing contained herein is intended to be dispositive of the criminal investigation initiated by the DEA indicating that the Truck was not properly registered and that the documents were forged or otherwise altered.